08-6187-cv; 08-6190-cv
*Romano v. Kazacos*; *Lawton v. Isabella*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2009

(Argued: September 11, 2009                    Decided: June 29, 2010)

Docket No.  08-6187-cv

————————————

JOHN D. ROMANO, STANLEY J. MORRILL, RICHARD V. PATRICK,

*Plaintiffs-Appellants*,

— v.—

MICHAEL J. KAZACOS, MORGAN STANLEY & CO., INCORPORATED,

*Defendants-Appellees.*

## IN TANDEM WITH

Docket No.  08-6190-cv

————————————

WILLIAM D. LAWTON, GERALD G. MILLER, JR.,

*Plaintiffs-Appellants*,

— v.—

DAVID ISABELLA, MORGAN STANLEY & CO., INCORPORATED,

*Defendants-Appellees.*

————————————

Before:  B.D. PARKER, WESLEY, *Circuit Judges*, RESTANI, *Judge.**

————————————

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

Appeal from two judgments of the United States District Court for the Western District of New York (Larimer, *J.*) granting defendants-appellees' motions to dismiss and denying plaintiffs-appellants' motions to remand. AFFIRMED.

_____

ROBERT J. PEARL, Pearl Malarney Smith, P.C., Pittsford, New York, *for Plaintiffs-Appellants William D. Lawton, Gerald G. Miller, Jr., John D. Romano, Stanley J. Morrill, and Richard V. Patrick.*

RICHARD A. MCGUIRK, Nixon Peabody LLP, Rochester, New York, *for Defendants-Appellees David Isabella, Michael J. Kazacos, and Morgan Stanley & Co. Incorporated.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precludes plaintiffs from filing certain class actions in state courts that allege fraud in connection with the purchase or sale of nationally traded securities. 15 U.S.C. § 78bb(f)(1). Plaintiffs-appellants in these consolidated appeals, who are Xerox and Kodak retirees, filed class action complaints in New York State Supreme Court, which purported to raise state law claims. They alleged that employees of Morgan Stanley & Co., Inc. misrepresented that if appellants were to retire early, their investment savings would be sufficient to support them through retirement. If SLUSA applies, appellants are precluded from bringing the actions in state court and defendants are entitled to remove them to federal court, where they are subject to dismissal. 15 U.S.C. § 78bb(f)(1). Defendants-appellees removed the actions to the United States District Court for the Western District of New York (Larimer, *J.*), where appellants moved to remand the cases and defendants moved to dismiss them. After affording appellants an opportunity to amend their

2

complaints to state federal claims, an opportunity appellants declined, the District Court denied the motions to remand and dismissed the actions. We find that SLUSA's preclusion provision applies and, therefore, we affirm.

## I. BACKGROUND

### A. Lawton and Miller

The following facts are taken from appellants' amended complaints unless otherwise noted. Appellants William D. Lawton and Gerald G. Miller, Jr. were both longtime employees of Xerox. Xerox employees who were eligible for retirement could elect to receive either lifetime monthly retirement benefits or a one-time lump sum retirement benefit. Appellee David Isabella was a Senior Vice-President of Morgan Stanley, a "retirement specialist," and a former Xerox employee. At various times between 1994 and 2001, Lawton and Miller consulted with Isabella about retirement. Lawton and Miller allege that during these meetings, Isabella provided retirement but not investment advice, performed various calculations, and advised them that they had sufficient savings to retire early and comfortably. Specifically, Lawton and Miller allege that Isabella advised them that if they could live on annual withdrawals of approximately ten percent of their retirement savings, they could retire early without exhausting their savings' principal, a concept appellants refer to as the "retirement income premise." Lawton and Miller further allege that they elected early retirement in reliance on Isabella's advice, leaving behind job security and substantial benefits. Both elected to take a lump sum retirement benefit, which they invested, about eighteen months after they first met with Isabella, in various securities through Morgan

3

Stanley. Subsequently, the value of their portfolios dropped precipitously, resulting in substantially reduced monthly withdrawals and significant financial hardship.

Lawton and Miller filed (and subsequently amended) a putative class action against Isabella and Morgan Stanley. The amended complaint asserted various state law causes of action, including negligence, breach of fiduciary duty, negligent misrepresentation, and breach of contract, as well as an unfair and deceptive trade practices claim under Section 349 of the New York General Business Law. N.Y. Gen. Bus. L. § 349 (McKinney 2010). The amended complaint defined the putative class as Xerox employees who received similar retirement advice from Isabella and alleged that the putative class's size was between 100 to 300 or more persons. Morgan Stanley and Isabella, relying on SLUSA, removed the case to federal court, and moved to dismiss. Lawton and Miller cross-moved to remand on the ground that they had not asserted federal claims.

## B. Romano, Morrill, and Patrick

The companion case involving Kodak employees presents a roughly similar picture. Kodak employees who reach retirement are eligible to receive retirement benefits in the form of either a fixed monthly annuity or a one-time lump sum benefit. Employees who elect to retire early forfeit their employment, job benefits, and annual salary. Appellants John D. Romano, Stanley J. Morrill, and Richard V. Patrick (the "Romano appellants") are former longtime Kodak employees who, in connection with their retirement planning, consulted with Michael J. Kazacos, a Senior Vice President, financial consultant, and retirement specialist at Morgan Stanley.

4

According to the Romano appellants' amended complaint, Kazacos represented that he was an expert on Kodak's retirement benefits and, starting in 1990, hosted free seminars offering retirement advice. The Romano appellants allege that, during these seminars as well as during individual appointments, Kazacos advised them that they had sufficient assets to retire and encouraged them to retire early and take lump sum retirement benefits. The Romano appellants insist that, during these meetings, Kazacos gave no investment advice and did not mention or recommend specific investment vehicles or asset allocation strategies. The Romano appellants each elected to retire early and take a lump sum retirement benefit, which they placed with Morgan Stanley for investment. As was the case with Lawton and Miller, the Romano appellants' retirement accounts suffered "disastrous" declines in value, allegedly because Kazacos's retirement advice was inappropriate and "had a significant probability of failure." Because of this drop in value, the Romano appellants allege that their incomes and standards of living have fallen markedly. Also, a number of class members allege that they have been required to leave retirement and seek new employment.

The Romano appellants filed (and subsequently amended) a putative class action against Morgan Stanley and Kazacos in New York State Supreme Court alleging common law claims of negligence, breach of fiduciary duty, negligent misrepresentation, breach of contract, and violations of Section 349 of New York's General Business Law, and seeking as damages lost wages and lost employment benefits. The amended complaint defined the class as "persons who were Kodak employees and who received from the Defendants retirement advice, projections of income, and representations as to sustainable retirement income distributions from their

5

retirement savings that were material to the Plaintiffs" and describes the class as including 100 persons to 1000 persons "or more." Morgan Stanley removed the action to federal court, where it was consolidated with the Lawton action, and moved to dismiss pursuant to SLUSA and Rule 12(b)(6). At the same time, appellants moved to remand for lack of federal jurisdiction.

## C. Proceedings Below

While considering defendants' motions to dismiss and appellants' motions to remand, the District Court concluded that it could "look beyond the face of the complaint" to determine whether SLUSA applies. Upon doing so, the District Court ruled that appellants' state law actions were "based on misrepresentations or omissions of material facts" since the "foundation of the retirement and financial planning services centered upon certain misrepresentations and certain concealments." The District Court also ruled that although "plaintiffs say [their] claims are about bad retirement advice and tax planning," and despite a lapse in time between defendants' alleged fraud and appellants' purchases of covered securities, defendants' alleged misconduct "coincided" with appellants' securities purchases under *Merrill Lynch, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). On this basis, the District Court denied the motions to remand, held that SLUSA preempted both actions, and dismissed them. These appeals followed. We review *de novo* both the District Court's denial of appellants' motions to remand and its grant of defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6). *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008); *Ortiz v. McBride*, 380 F.3d 649, 653 (2d Cir. 2004).

## III.  DISCUSSION

6

Congress enacted § 10(b) of the Securities Exchange Act of 1934 to make it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Pursuant to § 10(b), the SEC promulgated Rule 10b-5, which makes it unlawful

> for any person . . . [t]o employ any device, scheme, or artifice to defraud, [t]o make any untrue statement of a material fact or to omit to state a material fact . . . or [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Private rights of action are, of course, available to enforce Rule 10b-5. *See Dabit*, 547 U.S. at 79. In 1995, in response to perceived abuses of the class-action vehicle in Rule 10b-5 litigation, Congress passed the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. §§ 77z-1, 78u-4. The PSLRA established uniform standards for class actions alleging securities fraud, including more stringent pleading requirements for certain securities fraud class actions brought in federal courts. *See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122-23 (2d Cir. 2003).

After the PLSRA's enactment, plaintiffs began circumventing its restrictions by filing federal securities fraud class actions in state court, where they could assert many of the same causes of action while avoiding the PSLRA's requirements, which apply in federal court. *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107, 108 (2d Cir. 2001); *see also Spielman*, 332 F.3d at 123. In an effort to curb these perceived, new abuses, Congress enacted SLUSA in

1998.[1]  Under SLUSA, "covered class actions" involving "covered securities" that are filed in state court, invoke state law, and allege securities fraud are removable to federal court, where they are to be dismissed.  15 U.S.C. § 78bb(f)(1).  Specifically, SLUSA provides that

> [n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). A "covered security" is a security "traded nationally and listed on a regulated national exchange."  15 U.S.C. § 78bb(f)(2).  A "covered class action" is a single lawsuit in which damages are sought on behalf of more than fifty persons.  15 U.S.C. § 78bb(f)(2).

In order to remove successfully a securities fraud class action to federal court and compel its dismissal, a defendant must show that the state action (1) is a "covered" class action (2) based on state statutory or common law that (3) alleges that defendants made a "misrepresentation or omission of a material fact" or "used or employed any manipulative device or contrivance in connection with the purchase or sale" (4) of a covered security.  15 U.S.C. § 78bb(f).  The parties agree that the underlying lawsuits involve covered class actions.  However, appellants contend that their amended complaints do not allege misrepresentations or omissions of material fact in connection with the purchase or sale of covered securities, placing prongs (3) and (4) in dispute.

---

[1]  SLUSA amends both the Securities Act of 1933 and the Securities Exchange Act of 1934.  The 1933 amendments are codified at 15 U.S.C. § 78p, and the 1934 Act amendments, which are substantially similar, are codified at 15 U.S.C. § 78bb(f).  For ease of reference, we cite the 1934 codification only.

## A. Master of the Complaint

Appellants initially contend that the District Court impermissibly looked beyond the face of the amended complaints, which make no reference to the federal securities laws, when it found that SLUSA applied. Appellants maintain that, under the "master of the complaint" rule, they are "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). Since jurisdiction "may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986), appellants contend that they are entitled to avoid SLUSA by not asserting federal claims in state proceedings.

Appellants are incorrect. Whether federal courts have federal question jurisdiction over an action is typically governed by the "well-pleaded complaint" rule, pursuant to which federal question jurisdiction exists only if "plaintiff's statement of his own cause of action shows that it is based" on federal law. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1275 (2009); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, then, plaintiff is the master of his complaint and is free to avoid federal jurisdiction by "pleading only state claims even where a federal claim is also available." *Marcus*, 138 F.3d at 52. However, there exists a corollary to the well-pleaded complaint rule–the "artful pleading" rule–pursuant to which plaintiff cannot avoid removal by declining to plead "necessary federal questions." *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998). If the artful pleading rule applies, courts look beyond the face of an "artfully pled" complaint to determine whether plaintiff has "cloth[ed] a federal law claim in state garb" by pleading state law claims that actually arise under federal law. *Travelers Indem. Co. v.*

9

*Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986). If such is the case, the reviewing court will "uphold removal even though no federal question appears on the face of the complaint." *Rivet*, 522 U.S. at 475.

The artful pleading rule applies when Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead "necessary federal questions," *id.*, or (2) expressly provided for the removal of particular actions asserting state law claims in state court, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (explaining the Price-Anderson Act, 42 U.S.C. § 2014(hh), presents an exception to the well-pleaded complaint rule because it "expressly provides for removal of [tort actions arising out of nuclear accidents] brought in state court even when they assert only state-law claims"). Application of the first prong is a bit tricky because SLUSA is a statute of preclusion, rather than preemption.[2] But its effect is the same: where plaintiffs proceed

---

[2] In *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003), we ruled that SLUSA completely preempts the field of certain types of securities class actions and therefore constitutes an exception to the well-pleaded complaint rule. In keeping with this rule, the District Court considered the substance of appellants' amended complaints and concluded that appellants alleged fraud in connection with the purchase or sale of covered securities. However, subsequent to our decision in *Spielman*, the Supreme Court ruled that SLUSA is a preclusion, and not a preemption, statute. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 637 n.1 (2006). SLUSA does not *displace* state law with federal law. *Id*. Rather, SLUSA renders nonactionable state claims brought by plaintiffs as part of a covered class action because such claims cannot be litigated in state court *or* in federal court. *See id.*

Furthermore, under SLUSA, plaintiffs can still bring state law claims alleging fraud in connection with transactions in covered securities in state court so long as they pursue their claims individually or as part of a class numbering fifty or less. *See id*. Therefore, rather than preempting state law claims, SLUSA *precludes* plaintiffs from bringing certain state law claims as part of a covered action. *See id.*; *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1219-20 (9th Cir. 2009) (finding that SLUSA, as a preclusion defense, does not fall under "the complete preemption exception to § 1331's well-pleaded complaint rule").

as a class of fifty or more, state law securities claims are no longer available to them and federal law, which compels the dismissal of those claims, controls. Application of the second prong is straightforward. Since SLUSA expressly provides for the removal of covered class actions, it falls under the "removal" exception to the well-pleaded complaint rule. 15 U.S.C. § 78bb(f)(1). Consequently, we are free to look beyond the face of the amended complaints to determine whether they allege securities fraud in connection with the purchase or sale of covered securities. *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("No matter how an action is pleaded, if it is a covered class action involving a covered security, removal is proper.") (quotations and alterations omitted); *see also Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) ("Courts may look to–they must look to–the substance of a complaint's allegations in applying SLUSA. Otherwise, SLUSA enforcement would reduce to a formalistic search through the pages of the complaint for magic words . . . and nothing more.").

## B. Covered Securities

The amended complaints do not acknowledge that appellants invested in covered securities.[3] However, in support of their notice of removal, defendants introduced account statements establishing that appellants deposited their retirement savings into Morgan Stanley IRA accounts, where covered securities were purchased on their behalf: mutual funds in the case of the

---

[3] SLUSA defines "covered securities" as securities that satisfy the standards set forth in the Securities Act of 1933. 15 U.S.C. § 78bb(f)(5)(E). Under §18(b) of the Securities Act of 1933, a covered security is one that is "listed, or authorized for listing, on [the national exchanges]" or that is "issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." 15 U.S.C. § 77r(b).

11

Romano appellants and mutual funds and listed securities or securities authorized for listing in the case of the Lawton appellants.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts focus primarily on the allegations in the complaint. *See Chambers v. Time Warner*, 282 F.3d 147, 152 (2002).[4] However, if subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings. *See* Rule 12(b)(1); *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *see also St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 79, 80-81 (2d Cir. 2005); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis. *See, e.g.*, *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957) (looking to information contained in affidavits submitted in support of a motion to remand to determine removability); *see also Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir. 1985) (holding it was proper for the district court to look to a motion to remand and removal petition to determine removability).

Under SLUSA, removal jurisdiction is "restricted to precluded actions[. Therefore,] a motion to remand claiming the action is not precluded must be seen as posing a jurisdictional

---

[4] In *Dabit v. Merrill Lynch, Pierce, Fenner & Smith*, 395 F.3d 25, 29 (2d Cir. 2005), *overruled by* 547 U.S. 71 (2006), we stated that we are to "assume [the] truth [of the allegations raised in plaintiffs' complaints], as we must upon review of a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." In *Dabit*, the parties did not dispute any factual issues essential to this Court's analysis under SLUSA and it was therefore unnecessary to look beyond the pleadings. *See Dabit*, 395 F.3d at 34. In contrast, here, appellants do not concede, on the record, that they purchased or sold covered securities. Therefore, it is necessary to look beyond the amended complaints to determine whether, under SLUSA, jurisdiction over appellants' suits lies with the federal courts. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

issue." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643-44 (2006).  Thus, where a district court's removal jurisdiction under SLUSA is challenged, it must first determine whether it has subject matter jurisdiction over plaintiffs' claims.  *See Dabit*, 395 F.3d at 36 n.8 (citing *Spielman*, 332 F.3d at 133) (Newman, *J.*, concurring).  To answer that question, it must determine whether plaintiffs actually allege misrepresentations or omissions of material fact "in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1), (2).  Here, the Morgan Stanley account statements were before the District Court in the remand litigation and were used to determine that the euphemistic "investments" referred to throughout the amended complaints were, in fact, "covered securities."  The District Court was entitled to look beyond the four corners of appellants' amended complaints because determining whether the cases were properly removed under SLUSA is essentially a jurisdictional question.  *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009).

**C.  Misrepresentations or Omissions of Material Fact**

The amended complaints alleged at various places that defendants made misrepresentations and omissions of material fact.  For example, defendants are alleged to have made "uniform misrepresentations" to appellants about whether they could afford to retire early without depleting their investment accounts, and to have "misrepresented or concealed material facts that they knew, or should have known, would show that their pre-retirement communications with Plaintiffs had been false, incorrect, or misleading."  The amended complaints further alleged that defendants made omissions by "fail[ing] to disclose material information which, under the circumstances, should have been disclosed to the plaintiffs" and communicated "inaccurate, incomplete or

13

erroneous information to Plaintiffs concerning the consequences of retirement and the feasibility of early retirement from secure positions of employment." As for materiality, appellants allege that the misrepresentations "would have been material to a reasonable person under these circumstances" and were "material to the Plaintiffs as reasonable persons, and their decisions to retire and to accept lump sum distributions of their pension funds."

**D. In Connection with the Purchase or Sale of Covered Securities**

We next consider the more difficult question of whether, under SLUSA, the amended complaints alleged misrepresentations and omissions in connection with the purchase or sale of covered securities. In *Merrill Lynch, Fenner & Smith, Inc. v. Dabit*, the Supreme Court considered this issue and looked to its prior interpretations of § 10(b) and Rule 10b-5 because the "in connection with" language is the same as in SLUSA. *See* 547 U.S. at 85-87. In *SEC v. Zandford*, decided prior to *Dabit*, the Supreme Court concluded that § 10(b)'s "in connection with" requirement is met where a fraudulent scheme and a purchase or sale of securities "coincide." 535 U.S. 813, 822 (2002); *see also United States v. O'Hagan*, 521 U.S. 642, 656 (1997) (determining that the "in connection with" element was satisfied because "the securities transaction and the breach of duty [] coincide"). Much the same, the *Dabit* Court ruled that defendant's alleged fraud must "coincide" with plaintiff's purchase or sale of covered securities to meet SLUSA's "in connection with" requirement. 547 U.S. at 85.

The "coincide" requirement is broad in scope, *id.* at 86, and courts have used various terms to describe it.[5] In our opinion in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, which the

[5]  The Sixth Circuit has found the "coincide" requirement satisfied where plaintiff's allegations "depend" upon transactions in securities. *See Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310

Supreme Court overruled on other grounds, we considered the "coincide" requirement articulated in *Zandford* and concluded that SLUSA's "in connection with" standard is met where plaintiff's claims "turn on injuries caused by acting on misleading investment advice"–that is, where plaintiff's claims "necessarily allege," "necessarily involve," or "rest on" the purchase or sale of securities. *Dabit v. Merrill Lynch, Fenner & Smith, Inc.*, 395 F.3d 25, 48, 50 (2d Cir. 2005) (citing *Zandford*, 535 U.S. at 820, 825), *overruled by* 547 U.S. 71. We have also found that the more exacting "induced" standard satisfies § 10(b)'s "in connection with" requirement. *See, e.g.*, *Press v. Chem. Invest. Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999) ("The Second Circuit has broadly construed the phrase 'in connection with,' . . . mandat[ing] only that the act complained of somehow *induced* the purchaser to purchase the security at issue.") (emphasis added); *United States v. Ostrander*, 999 F.2d 27, 32-33 (2d Cir. 1993) ("Any payment to a portfolio manager *intended* to induce the purchase of a firm's securities on behalf of an investment company easily

---

(6th Cir. 2009). The Seventh Circuit has determined that the "coincide" requirement requires plaintiff to allege fraud "involving" covered securities, noting that a simple "but for" relationship between an alleged fraud and the purchase or sale of securities is insufficient. *Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) (finding that under a "but for" standard, "SLUSA would apply to a class action by shareholders who suffered paper cuts when they opened the letters informing them of their rights [to tender their stock] under the merger"); *see also Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 942 (2d Cir. 1984) (finding "but for" causation does not satisfy § 10(b)'s "in connection with" requirement). The Eighth Circuit has concluded that "coincide" is less stringent than a standard requiring that defendant's non-disclosure "relate" to plaintiff's decision to purchase a security. *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008). The Ninth Circuit has probed whether defendant's alleged misrepresentations and omissions "are more than tangentially related" to plaintiff's purchase of covered securities. *Madden v. Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009). The Eleventh Circuit has found the "in connection with" requirement is satisfied where defendant's fraud "induced" plaintiff to transact in covered securities. *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1349-50 (11th Cir. 2008).

15

qualifies as a 'fraudulent, deceptive or manipulative' act 'in connection with' the investment company's acquisition of securities.") (emphasis added). As discussed below, we conclude that the misrepresentations and omissions in question induced securities transactions, and that the claims we are considering "necessarily involve" and "necessarily rest on" them. *See Dabit v.* 395 F.3d 25 at 48, 50.

Appellants maintain that the connectivity required by *Dabit* is absent for a number of reasons. They note that they specifically aver that they do not bring claims for violation of state or federal securities laws and that their amended complaints contain no allegations relating to defendants' investment of appellants' retirement funds. Rather, appellants contend that they assert only "garden variety" state negligence and breach of fiduciary duty claims that "do not relate to the value of any given security" and exclusively concern matters such as financial and retirement planning and tax advice, all of which are divorceable from appellants' ultimate purchase of securities.

Appellants also point out that they seek "only employment damages" and do not "seek any damages which relate to the performance of any investments they may have made" with defendants. Thus, appellants urge, their eventual purchases and sales of securities are "too far" removed from defendants' alleged negligence and misrepresentations to trigger SLUSA preemption.

Appellants' contentions are misplaced because the task of determining whether SLUSA applies is not limited simply to an examination of the relevant pleadings. If that were so, the statute could be avoided merely by consciously omitting references to securities or to the federal

securities law.  SLUSA requires our attention to both the pleadings and the realities underlying the claims.  In any event, defendants, focusing on the pleadings, contend that the amended complaints are "replete" with allegations concerning securities investments.  For example, defendants point out that Lawton asserts that he attended a seminar where, "[w]ithout mentioning or recommending any specific security or other asset allocation strategy, Isabella assured the Plaintiffs that the *future returns on their retirement assets* would be sufficient to sustain their retirement income fo the rest of their lives."  (emphasis added).  Lawton also contends that he planned to "live off the assets [of his investment plan] and leave the pension proceeds for Defendants to invest without substantial risk of depletion by periodic withdrawals."

The Romano appellants' amended complaint, defendants point out, alleges that Kazacos marketed himself as advising "clients retiring from companies and *primarily investing* their lump sum portfolios" and assured appellants that "future returns on their retirement assets" would sustain them through their retirement.  Defendants point out that the amended complaints allege that Romano "retired and placed approximately $170,000 . . . with Defendants for investment" and that, after the "bear market from 2000-2003," "Defendants affirmatively assured . . . Plaintiffs that their retirement income remained secure for their lifetimes.  In so saying, Defendants misrepresented or concealed material facts they knew, or should have known . . . . "  Both complaints allege that defendants told them that they could

> base his/her retirement and financial plan on, and justifiably rely upon, secure income each year in the amount of approximately 10% on the client's retirement plan accumulations and cash-out values at that time for the expected lifetime of the client, enabling the client to receive regular income sufficient to maintain the

17

client's lifestyle and retirement and financial goals without significant risk of depletion of principal.

We agree with defendants that these allegations satisfy SLUSA's "in connection with" requirement because appellants, in essence, assert that defendants fraudulently induced them to invest in securities with the expectation of achieving future returns that were not realized. In reaching this conclusion, we bear in mind that we must give a broad construction to the "in connection with" requirement. As the Supreme Court has observed, "[t]he presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment." *Dabit*, 547 U.S. at 86. Though appellants contend that they seek only "employment damages," the amended complaints are inconsistent with this characterization. Lawton and Miller's amended complaint alleges that "plaintiffs suffered no measurable damage *until the point in time when their expectations were actually not met*, and they were then forced to either reduce their retirement income, or return to the workforce and seek employment, or accept the total depletion of their retirement savings." (emphasis added). Romano's amended complaint includes similar language. Even though appellants attempt to recharacterize their investment losses as "employment damages" rather than portfolio losses, it is apparent to us that the injury complained of resulted from the diminution in value of appellants' investment accounts.

Finally, citing affidavits appended to their motions to remand, appellants emphasize that they did not invest in any covered securities for up to eighteen months after defendants advised them of the retirement income premise. We are not persuaded that the lapse of any particular

18

amount of time necessarily defeats the "in connection with" requirement, though it does complicate the analysis.

*Dabit*, we note, does not pivot on temporal limitations. 547 U.S. at 86-87. Rather, the *Dabit* Court focused on the broad scope of SLUSA's "in connection with" requirement to construct a flexible standard for determining whether SLUSA applies to a particular class action. *Id.* This flexible approach comports with *Zandford*, which requires that the phrase "in connection with" be construed "not technically and restrictively but flexibly to effectuate its remedial purposes." *Zandford*, 535 U.S. at 819. Therefore, we decline to find that the passage of eighteen months between the alleged fraud and the purchase or sale of securities necessarily defeats SLUSA's "in connection with" requirement. We are persuaded that the time that lapsed is not determinative here because, as defendants argue, "this was a string of events that were all intertwined." *See SEC v. Pirate Investor LLC*, 580 F.3d 233, 245 (4th Cir. 2009) ("The 'in connection with' test is satisfied when the proscribed conduct and the sale are part of the same fraudulent scheme.") (alterations omitted) (citing *Alley v. Miramon*, 614 F.2d 1372, 1378 n.11 (5th Cir. 1980).

And so, at the end of the day, this is a case where defendants' alleged misrepresentations induced appellants to retire early, receive lump sum benefits, and invest their retirement savings with defendants, where the savings were used to purchase covered securities. When the securities plummeted in value, appellants sued to be made whole. Because both the misconduct complained of, and the harm incurred, rests on and arises from securities transactions, SLUSA applies.

## IV. CONCLUSION

The judgments of the District Court are affirmed.