11-423-cv
Arditi v. Lighthouse Int'l

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2011

(Argued: August 25, 2011    Decided: February 9, 2012)

Docket No. 11-423-cv

————————————————

ARIES ARDITI,

*Plaintiff-Appellant,*

v.

LIGHTHOUSE INTERNATIONAL,

*Defendant-Appellee.*

————————————————

Before:

STRAUB and CHIN, *Circuit Judges*, and
PRESKA, *Chief District Judge*.[*]

————————————————

Appeal from a judgment of the United States

District Court for the Southern District of New York (Cote,

*J.*) denying plaintiff-appellant's motion to remand the case

————————————————

[*]    The Honorable Loretta A. Preska, Chief Judge,
United States District Court for the Southern District of New
York, sitting by designation.

to state court on federal preemption grounds under the Employee Retirement Income Security Act and dismissing the action for failure to state a plausible claim for relief.

Judge PRESKA dissents in a separate opinion.

AFFIRMED.

---

RONALD S. GREENBERG (Jared I. Heller, *on the brief*), Kramer Levin Naftalis & Frankel LLP, New York, New York, *for Plaintiff-Appellant*.

MICHELLE SCHOTT (Curtis C. Mechling, Joanna S. Smith, *on the brief*), Stroock & Stroock & Lavan LLP, New York, New York, *for Defendant-Appellee*.

---

CHIN, *Circuit Judge*:

In this case, the district court found that plaintiff-appellant Aries Arditi's claims against defendant-appellee Lighthouse International ("Lighthouse") were preempted by the Employee Retirement Income Security Act ("ERISA") because they arose under Lighthouse's Pension Plan (the "Plan") and not separately and independently out of Arditi's written employment agreement (the "Agreement").

The district court denied Arditi's motion to remand the case to state court, holding that Arditi's claims were preempted by ERISA and that his suit was therefore properly removed to federal court. The district court then dismissed the action for failure to state a claim because Arditi had not stated any basis for challenging Lighthouse's authority to amend the Plan.

On appeal, Arditi argues that the additional benefits he seeks are based on a promise separate and independent from the Plan. We disagree. Accordingly, we affirm the district court's denial of Arditi's motion to remand the case to state court and dismissal of the action for failure to state a claim upon which relief may be granted.

### STATEMENT OF THE CASE

**1. The Facts**

The following facts are undisputed.

From 1982 to 2000, Arditi was employed by Lighthouse as a "vision scientist." During this time, under the Plan, Arditi accrued 18.83 years of service credit.

-3-

In 2000, Arditi left Lighthouse, accepting employment elsewhere. After his departure, Lighthouse amended the Plan, adding a "Rule of 85," which entitled any qualified employee to retire and collect her pension benefits before the age of 65 if the sum of the employee's age and years of vested service were equal to or greater than 85.[1] The Plan also reserved Lighthouse's right to amend the Plan, stating: "Lighthouse reserves the right at

---

[1] The relevant provisions of the Plan were as follows:

Effective April 1, 2001, if a Member's combined age and years of Vesting Service equals 85 or more the early retirement benefit shall be equal to his Accrued Benefit at such Early Retirement Date; however, such early retirement benefit shall not be subject to reduction.

. . .

If a former Member is reemployed following a Period of Severence of more than 12 months, he shall again become a Member on his Reemployment Date. Such Member's Vesting Service and Credited Service shall be restored upon his completion of one year of Continuous Service . . .

(Barr Decl., ECF Doc. No. 11-2, Ex. B ¶¶ 5.1(c), 7.3(b), *Arditi v. Lighthouse Int'l*, No. 10 Civ. 8416 (S.D.N.Y. Nov. 19, 2010)).

-4-

any time, by action of the Board, to modify or amend the Plan in whole or in part."  (Barr Decl., Ex. B ¶ 14.1).

On July 1, 2002, Arditi returned to Lighthouse, in part to take advantage of the Rule of 85 amendment.  The Agreement, which was dated June 13, 2002 and signed by both parties, read as follows:

> With respect to the . . . Plan, in which you are already fully vested, your new employment here will result in reinstatement as a plan member.  You now have credited service for purposes of pension calculation of 18.83 years of previous service and the amount of time you work here in the future will be added.
>
> Our retirement plan has now added a Rule of 85 provision that provides an unreduced benefit to employees whose age plus years equal 85 or more.  As you are now age 51, your age plus your years of service is approximately 70 years.  Assuming you continue to work at the Lighthouse for another eight years, your age then, 59 and years of service then, 26, would equal 85.  At that time if you opt to retire you will receive an unreduced pension benefit.

(Greenberg Decl., ECF Doc. No. 17-1, Ex. A at 2, *Arditi v. Lighthouse Int'l*, No. 10 Civ. 8416 (S.D.N.Y. Dec. 10, 2010)).

On May 14, 2007, Lighthouse notified Plan members, including Arditi, that the Plan would be frozen. Indeed, on June 30, 2007, before Arditi's age and years of service reached a total of eighty-five, the Plan was frozen. The freeze stopped the accrual of service time for all Plan members.

On March 19, 2010, Arditi retired. Because of the freeze, Lighthouse did not credit Arditi for nearly three years of service -- from July 1, 2007 (the date Lighthouse froze the Plan) to March 19, 2010 (the date Arditi retired).

## 2. *Proceedings Below*

On September 30, 2010, Arditi filed a lawsuit against Lighthouse in state court, seeking a declaratory judgment and asserting two causes of action for breach of contract. The complaint expressly referred to the Plan and sought benefits under the Plan. Lighthouse removed the

action to federal court. Arditi promptly and voluntarily discontinued the action.

On November 2, 2010, Arditi repleaded his claims and refiled the lawsuit in state court. The new complaint contained the same two causes of action as the first complaint, but eliminated certain direct references to the Plan and to ERISA.

The second action was also removed to federal court. On November 15, 2010, Arditi filed a motion to remand to state court. On November 19, 2010, Lighthouse filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

On January 18, 2011, the district court denied Arditi's motion to remand and dismissed the complaint. *Arditi v. Lighthouse Int'l*, No. 10 Civ. 8416, 2011 WL 166919 (S.D.N.Y. Jan. 18, 2011). The district court held that Arditi's claim was properly removed to federal court because it was preempted by ERISA. *Id.* at *4; *see* ERISA § 502, 29 U.S.C. § 1132. The district court also held that dismissal of the complaint was warranted because Arditi failed to

state any basis for challenging Lighthouse's authority to amend the Plan. *Arditi*, 2011 WL 166919, at *4.

This appeal followed.

### *DISCUSSION*

We review a district court's ERISA preemption ruling and 12(b)(6) dismissal for failure to state a claim *de novo*. *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (preemption ruling); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (Rule 12(b)(6) dismissal). First, we examine the district court's denial of Arditi's motion to remand the case to state court. Second, we consider the district court's dismissal of the case for failure to state a claim.

## I. *Motion to Remand*

### A. *Applicable Law*

#### 1. *Removal*

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). District courts have original

jurisdiction over "federal question" cases, or cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To determine if a case involves a federal question, courts generally turn to the "well-pleaded complaint" rule -- that is, courts examine "what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses . . . [that] the defendant may interpose." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)) (internal quotation marks omitted).

Federal preemption provides one exception to the well-pleaded complaint rule. *See id.* "When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed" to federal court. *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)) (internal quotation marks omitted). "ERISA is one of these statutes." *Id.* at 208. "This is so because when the federal statute completely pre-empts the state-law cause of action, . . .

even if pleaded in terms of state law, [it] is in reality based on federal law."  *Id.* at 207-08 (internal quotation marks omitted).  This exception also prevents plaintiffs from "avoid[ing] removal" to federal court "by declining to plead necessary federal questions."  *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted).

### 2.   *ERISA Preemption*

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)).  Section 502(a)(1)(B) of ERISA provides participants or beneficiaries with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans.  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a).

-10-

To establish a "uniform regulatory regime over employee benefit plans," and "to ensure that employee benefit plan regulation is exclusively a federal concern," ERISA includes expansive pre-emption provisions. *Davila*, 542 U.S. at 208 (internal quotation marks and citations omitted); *see* ERISA § 514, 29 U.S.C. § 1144. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514, 29 U.S.C. § 1144.

Under the Supreme Court's test in *Davila*, ERISA preempts a cause of action where: (1) "an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);" and (2) "no other independent legal duty . . . is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; *see Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (applying the *Davila* two-part conjunctive test). To avoid potential confusion under the first prong of *Davila*, this Court has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim

pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328.

B.   *Application*

1.   *ERISA Preemption*

First, in this case, *Davila*'s first prong is satisfied because Arditi could have brought his claim under ERISA. *See Davila*, 542 U.S. at 210. Indeed, he did so in his complaint in the first action. Under *Montefiore*, Arditi is the type of party who can bring an ERISA claim because he is a Plan participant and he is seeking benefits under the Plan and, specifically, under the Rule of 85 provision. *See Montefiore*, 642 F.3d at 328. Additionally, Arditi's actual claims asserted seek enforcement of specific provisions of the Plan, "implicate coverage and benefits established by the terms of the ERISA benefit plan," and "can be construed as . . . colorable claim[s] for benefits pursuant to § 502(a)(1)(B)." *Id.*

Second, *Davila*'s second prong is also satisfied because "no other independent legal duty" is implicated by Lighthouse's actions. *See Davila*, 542 U.S. at 210; *Montefiore*, 642 F.3d at 328. Lighthouse's obligations under the Plan are "inextricably intertwined with the interpretation of Plan coverage and benefits" and "[do] not create a sufficiently independent duty under *Davila*." *See Montefiore*, 642 F.3d at 332.

To avoid ERISA preemption, Arditi argues that he is not seeking benefits under the Plan. Instead, Arditi claims that he is seeking damages for breach of a promise separate and independent from the Plan and set forth in the Agreement, using the Plan merely as a benchmark for damages.

The argument fails because Arditi was in fact a participant in the Plan and his pension rights arose under the Plan. When Arditi rejoined Lighthouse, the Agreement stated: "With respect to the Lighthouse International Pension Plan, in which you are already fully vested, your new employment here will result in <u>reinstatement as a plan member</u>." (Greenberg Decl., Ex. A at 2 (emphasis added)).

The Agreement further described Lighthouse's "Rule of 85" provision as a new addition to "[o]ur retirement plan." (Greenberg Decl., Ex. A at 2). Hence, the language of the Agreement makes clear that Arditi was being "reinstate[d]" into the Plan, and that the Rule of 85 provision had been "added" to the Plan. (*Id.*). The Agreement described the benefits that Arditi would acquire upon his return to the Plan and made clear that Arditi's benefits arose from, and were governed by, the terms of the Plan. The Plan provided more than a mere benchmark for calculating damages; indeed, it was the basis for the claimed benefits. Thus, as the district court correctly held, the Agreement did not establish a separate and independent promise; rather, Arditi's claims derived directly from the Plan.

The Dissent argues that "[a]lthough Arditi was a participant in the Plan and entitled to receive a reduced benefit under it, he raises at least a colorable claim that his right in general to receive 'an unreduced pension benefit' upon retirement -- that is, a different benefit from that payable under the Plan -- arises under the express

-14-

terms of his employment agreement." (Dissent Op. at 6-7 (emphasis in dissenting opinion) (quoting Greenberg Decl., Ex. A at 2)). The phrase "unreduced pension benefit" appears in the last sentence of the second paragraph of the second page of the Agreement. (Greenberg Decl., Ex. A at 2). That paragraph, however, begins as follows: "<u>Our retirement plan</u> has now added a Rule of 85 provision <u>that provides an unreduced benefit</u> to employees whose age plus years equal 85 or more." (Greenberg Decl., Ex. A at 2 (emphases added)). In context, then, it is clear that the "unreduced pension benefits" arose from the Plan and not the Agreement.

Further, *Stevenson*, the case on which Arditi relies, is easily distinguishable. There, the plaintiff left the employ of the defendant bank. 609 F.3d at 60. The bank nonetheless promised to "maintain [the plaintiff's] benefits" under its pension plan, even though pension beneficiaries would normally lose coverage upon ending their employment with the bank. *Id.* This Court held that the plaintiff's complaint did "not derive[] from the particular

-15-

rights and obligations established by [any] benefit plan[] . . . but rather[,] from a separate promise that references various benefit plans."  *Id.* at 60-61 (quoting *Davila*, 542 U.S. at 213) (internal quotation marks and citations omitted).

Here, there is nothing in the Agreement that is comparable to the promises made in *Stevenson*.  *See id.* at 60.  In *Stevenson*, an agreement separate and independent from the pension plan governed the plaintiff's benefits because the plaintiff was no longer in the bank's employ and was no longer a participant in the bank's plan.  *Id.* at 60-61.  Whatever rights the plaintiff had arose not from the bank's plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan.  Here, the Agreement expressly referred to Arditi's "reinstatement" into the Plan as a Lighthouse employee and described Arditi's benefits under the Plan upon his return to Lighthouse.  The Agreement merely described the benefits Arditi would receive as a Plan member; it made no promises

of benefits separate and independent from the benefits under the Plan.

Accordingly, we agree with the district court that Arditi's claims are preempted by ERISA.

### 2.   *Removal*

The district court properly denied Arditi's motion to remand the case to state court because Arditi's state law claims are preempted by ERISA.  The suit was properly removed to federal court, the district court had federal jurisdiction over the case, and remand to state court was not warranted.  *See* 28 U.S.C. §§ 1331, 1441(a).

## II.  *Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

-17-

Here, the district court properly dismissed Arditi's complaint because he failed to state a claim for relief that was plausible on its face. *See id.* Arditi did not challenge Lighthouse's authority to amend the Plan; indeed, Arditi conceded that Lighthouse had the authority to freeze the Plan. Accordingly, the district court properly dismissed Arditi's action for failure to state a plausible claim. *Id.*

### *CONCLUSION*

We have considered Arditi's remaining arguments and conclude that they are without merit. For the reasons set forth above, the judgment of the district court is AFFIRMED.

PRESKA, *Chief District Judge*, dissenting:

The majority's decision today reaches beyond the squarely presented question of whether Arditi's claims are preempted by ERISA and in so doing effectively reaches the merits of his underlying state law contract claim against Lighthouse. Because the proper forum for resolving the underlying contract claim is the state court and the majority's holding eviscerates any distinction between the federal preemption and state law merits questions, I respectfully dissent.

As the majority notes, in determining whether a case involves a federal question such that remand to a state court would be inappropriate, courts look to the "well-pleaded complaint" - examining "what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses . . . [that] the defendant may interpose." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)) (internal quotation marks omitted). For the policy reasons described by the majority, ERISA serves as an exception to this rule because

it "wholly displaces the state-law cause of action through complete pre-emption." *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)) (internal quotation marks omitted). This exception does, as the majority suggests, prevent plaintiffs from "avoid[ing] removal" to federal court "by declining to plead 'necessary federal questions.'" *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (quoting *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998)).

ERISA preemption does not occur, however, <u>solely</u> because a state law claim may alternatively be a colorable claim under the ERISA statute. Under the Supreme Court's test in *Davila*, ERISA preempts a cause of action where: (1) "an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);" <u>and</u> (2) "no other independent legal duty . . . is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. This Court has clarified that the first prong of *Davila* is satisfied where: (a) a plaintiff is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B). *See Montefiore*

*Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011). The majority concludes that the first prong of the *Davila* test is satisfied because Arditi could have brought his claim under ERISA and because Arditi is the type of party who can bring an ERISA claim as a Plan participant seeking benefits under the Rule of 85 provision. *See* Majority Opinion ("Majority Op.") at 12. Though it is not at all clear to me that Arditi could make a colorable claim for his specific requested relief under the Plan's Rule of 85 provision (as the Plan was validly amended to exclude this benefit, (Barr Decl., ECF Doc. No. 11-2, Ex. B ¶ 14.1, *Arditi v. Lighthouse Int'l*, No. 10 Civ. 8416 (S.D.N.Y. Nov. 19, 2010)), I will accept it as true for the purposes of this opinion.

Even if the majority is correct in concluding that *Davila*'s first prong is met, ERISA preemption still does not occur unless "no other independent legal duty . . . is implicated <u>by a defendant's actions</u>." *Davila*, 542 U.S. at 210 (emphasis added). The two *Davila* prongs are independent; otherwise courts could essentially collapse them into one by finding that a plaintiff's claim is a

colorable one under ERISA and going no further. The majority appears to do so here. *See* Majority Op. at 12-13. The majority concludes that Lighthouse's obligations to Arditi under the Plan are "inextricably intertwined with the interpretation of Plan coverage and benefits" and therefore "[do] not create a sufficiently independent duty under *Davila*." *See id.* at 13 (citing *Montefiore*, 642 F.3d at 332). As this Court recently stated, however, an independent legal duty incorporating Plan benefits or relying on Plan terms and calculations does not in itself lead to ERISA preemption. *See Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 61 (2d Cir. 2010). Courts must look to the nature of a plaintiff's claim of an independent legal duty (and therefore to "defendant's actions," *Davila*, 542 U.S. at 210) for guidance.

The majority's analogy to this Court's prior holding in *Montefiore* on this point is flawed in two respects. First, the plaintiff health services provider in *Montefiore* claimed that the relevant independent legal duty arose in quasi-contract - specifically, that prior to providing services to each beneficiary under the Defendant

-4-

Fund's Plan, Montefiore called the Fund and verified that the patient was eligible and the anticipated services were covered, and that these verbal communications gave rise to an independent legal duty between Montefiore and the Fund. *Montefiore*, 642 F.3d at 332. This Court concluded that these verbal communications were insufficient on their face. *Id.* Second, and most critically, this Court observed in *Montefiore* that "this pre-approval process was <u>expressly required by the terms of the Plan itself</u>" and was <u>therefore</u> "inextricably intertwined with the interpretation of Plan coverage and benefits." *Id.* These facts starkly contrast with those in this case.

First, Arditi claims that an independent legal duty arose in this case as a matter of pure contract law, citing the text of his 2002 employment agreement with Lighthouse which states: "Assuming you continue to work at the Lighthouse for another eight years, your age then, 59 and years of service then, 26, would equal 85. <u>At that time if you opt to retire you will receive an unreduced pension benefit</u>." (Greenberg Decl., ECF Doc. No. 17-1, Ex. A at 2, *Arditi v. Lighthouse Int'l*, No. 10 Civ. 8416 (S.D.N.Y. Dec.

-5-

10, 2010) (emphasis added)). Essentially Arditi argues that this independent undertaking by his employer exempted him from the admittedly valid freezing of the Plan applicable to all other Plan participants and constituted a promise by the employer to make up the difference between the "unreduced pension benefit" allegedly promised in the agreement and the reduced pension benefit payable under the frozen Plan. Moreover, unlike in *Montefiore*, Lighthouse was under no specific obligation under the terms of the Plan itself to make this separate promise in Arditi's employment contract. Arditi argues on appeal, consistent with our prior holding in *Stevenson*, that he is seeking damages for breach of a promise made separately and independently from the Plan enrollment, but referencing its terms as a benchmark for calculation.

In rejecting Arditi's arguments, the majority states that they must fail because he was a participant in the Plan and his right to a pension arose solely under the Plan. *See* Majority Op. at 13. This goes too far. Although Arditi was a participant in the Plan and entitled to receive a reduced benefit under it, he raises at least a colorable

claim that his right in general to receive "an <u>unreduced</u> pension benefit" upon retirement - that is, a different benefit from that payable under the Plan - arises under the express terms of his employment agreement. This is precisely the species of claim this Court has already stated is <u>not</u> preempted by ERISA. *See, e.g., Stevenson*, 609 F.3d at 61 ("The BNY benefits plans may provide a benchmark for determining claimed damages, but such damages would be payable from BNY's own assets, not from the plans themselves."). So too in this case. Arditi's Complaint alleges an independent contractual duty to pay an unreduced pension benefit as a condition of his employment with Lighthouse "separate and apart from any obligation [Lighthouse] might have had under the Pension Plan." (Barr Decl., Ex. A at 8). As this allegation makes clear, Arditi is not merely seeking a claim of right under the Plan but damages for breach of an independent contractual obligation, not necessarily payable from the Plan itself but from Lighthouse's own assets. This claim for relief is entirely consistent with this Court's holding in *Stevenson* and is not preempted by ERISA.

The majority attempts to distinguish *Stevenson* by pointing to the fact that Stevenson had left the employ of the defendant bank, and the bank had nonetheless promised to "maintain [the plaintiff's] benefits" under its pension plan even though pension beneficiaries normally lost coverage upon terminating their employment. *See* Majority Op. at 15-16; *Stevenson*, 609 F.3d at 60. Because the *Stevenson* plaintiff was expressly not an employee and therefore no longer a member of the Plan, the majority argues, he can establish an independent obligation that Arditi cannot. *See* Majority Op. at 15-16. This current/former employee distinction is arbitrary and is not compelled by *Stevenson* itself. Unless the majority is prepared to hold today that current employees enrolled in ERISA-style benefit plans can never demonstrate that their employers have made them an independent promise calculated by reference to an existing plan, as in *Stevenson*, then the majority is simply evaluating the relative strength of the *Stevenson* and *Arditi* promises when it says "there is nothing in the Agreement that is comparable to the promises made in *Stevenson*." *See id.* at 16. Evaluating the strength of Lighthouse's promise

-8-

to Arditi in his employment agreement, however, is of course a matter of state contract interpretation rather than a matter of ERISA preemption. It is sufficient that Arditi points to a contract outside his enrollment in the Plan and raises a colorable claim that it establishes an independent legal duty between Lighthouse and himself. Actually adjudicating that contract claim is the province of the state court of competent jurisdiction.

Indeed, it is troubling that in reaching its holding today, the majority is forced to decide several ultimate issues of contract interpretation. This Court is forced to conclude, for example, that the language in the employment agreement referring to "reinstatement as a plan member," (Greenberg Decl., Ex. A at 2), outweighs the language stating "[a]t that time if you opt to retire you will receive an unreduced pension benefit," (*id.*). *See* Majority Op. at 13-15. The majority concludes that the employment agreement only "described the benefits that Arditi would acquire upon his return to the Plan and made clear that Arditi's benefits arose from, and were governed by, the terms of the Plan." *Id.* at 14. The fact this panel

cannot agree on what, if anything, the employment agreement "made clear" with regard to the pension benefit seems to cut against this holding and speaks to at least a fact question on contract interpretation. Moreover, it is clear that the majority here again views Arditi's enrollment in the Plan and ongoing employment with Lighthouse to be fatal to his claim, even if it does not state this in such pejorative terms. That Arditi is a Plan beneficiary does not, in my view, heighten his burden in raising a colorable claim of an extra-Plan independent legal duty based on "[D]efendant's actions." *Davila*, 542 U.S. at 210. Here, Arditi has done so. That it may be less clear-cut than the promise at issue in *Stevenson* is of no moment. A plaintiff raising a colorable independent claim of state contract law is not required to <u>prove</u> his case in federal court in order to avoid ERISA preemption.

Thus, the majority has collapsed the two *Davila* prongs into one: having found that Arditi's claim could possibly have been brought as a direct claim for Plan benefits under ERISA, it essentially stops there. The majority is only able to conclude cursorily that the second

*Davila* prong is satisfied by arbitrarily distinguishing

*Stevenson* and pointing to the clearly distinguishable facts

in *Montefiore* as evidence that Arditi's claim is also

"inextricably intertwined with the interpretation of Plan

coverage and benefits." *Montefiore*, 642 F.3d at 332.

Ironically, it was in *Montefiore* that this Court expressly

warned of the danger of confusing the two *Davila* prongs in

this way:

> [I]n situations in which a party seeks
> remand to a state court, it [is] easy to
> overlook the distinction between a claim
> (1) brought <u>solely</u> pursuant to an
> independent duty that has nothing to do
> with ERISA, and a claim which (2) <u>could</u>
> have been brought under ERISA, but <u>also</u>
> rests on "[an]other independent legal
> duty that is implicated by [the]
> defendant's actions." The former fails to
> satisfy the first prong of *Davila* because
> it does not state a "colorable claim" for
> benefits, *Firestone Tire & Rubber Co. v.
> Bruch*, 489 U.S. 101, 117-18 (1989), and
> therefore could not have been brought
> under ERISA, and the latter fails to
> satisfy the <u>second</u> prong of *Davila.*
> *Davila*, 542 U.S. at 210.

*Montefiore*, 642 F.3d at 328.  It is for this reason that the

fact that Arditi first styled his action as one for benefits

-11-

under the Plan is not relevant to our decision today.  *See, e.g.,* Majority Op. at 6-7.

For these reasons, I respectfully dissent.