*Link Motion Inc. v. DLA Piper LLP, et al.*

# In the

# United States Court of Appeals

# for the Second Circuit

_____

AUGUST TERM 2023

No. 23-944

LINK MOTION INC.,

*Plaintiff-Appellant,*

v.

DLA PIPER LLP (US); CARYN G. SCHECHTMAN,

*Defendants-Appellees.*

_____

ARGUED: FEBRUARY 1, 2024

DECIDED: JUNE 10, 2024

_____

Before: LEVAL, RAGGI, and BIANCO, *Circuit Judges.*

_____

In this legal malpractice action removed from the New York State Supreme Court to the United States District Court for the Southern District of New York (Victor Marrero, *Judge*), plaintiff Link Motion Inc. appeals from the dismissal of its complaint as time-barred and from the denial of its motion to remand the action to state court. This court concludes that remand is warranted for lack of federal jurisdiction. The federal law standing question that the district court identified as

embedded in Link Motion's malpractice claim does not fall within the narrow category of "disputed and substantial" questions of federal law permitting the exercise of federal jurisdiction over a state law claim. *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 (2005).

VACATED AND REMANDED.

_____

MICHAEL J. MALONEY (Rosanne E. Felicello, *on the briefs*), Felicello Law P.C., New York, N.Y., *for Plaintiff-Appellant*.

NANCY E. HART (Kevin S. Rosen, Peter M. Wade, William J. Moccia, and Katherine Moran Meeks, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY, Los Angeles, CA, Washington, DC, *for Defendants-Appellees*.

_____

REENA RAGGI, *Circuit Judge*:

Link Motion Inc. ("LKM"), a Chinese company incorporated in the Cayman Islands, brought this legal malpractice action against the law firm of DLA Piper LLP (US) and one of its attorneys (hereafter referred to collectively as "DLA Piper") in the New York State Supreme Court for New York County. After DLA Piper removed the case to the United States District Court for the Southern District of New York (Victor Marrero, *Judge*), that court entered a judgment of dismissal on May 26, 2023, finding LKM's action to have been untimely filed. On this appeal, LKM challenges both that timeliness determination and the district court's earlier denial of LKM's motion to remand the case to state court. For reasons explained in this opinion, we conclude that the case must be returned to state court for lack

2

of federal jurisdiction over LKM's state law claim. The federal law standing question that the district court identified as embedded in LKM's malpractice claim does not fall within the narrow category of "disputed and substantial" questions of federal law permitting the exercise of federal jurisdiction over a state law claim. *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 (2005). Accordingly, we vacate the judgment of dismissal without considering the question of timeliness, and we remand the case to the district court with instructions that it return LKM's malpractice action to the New York Supreme Court.

## BACKGROUND

The facts relevant to this appeal derive from LKM's complaint, documents referenced therein, and matters arising in this and related litigation of which we may take judicial notice in considering federal jurisdiction. *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) ("[I]f subject matter jurisdiction is contested, courts are permitted to look to materials outside the pleadings.").

In July 2018, LKM engaged DLA Piper for "corporate advice," both generally and specifically in connection with a stock offering. LKM Compl. ¶ 12, J. App'x 22. Later that year, Wayne Baliga, a holder of LKM's American Depositary Receipts ("ADRs"), sued LKM; its chairman, Vincent Shi; and other executives and directors by filing what was styled as a "Verified Shareholder Derivative Complaint" in the United States District Court for the Southern District of New York. *See* Compl., *Baliga v. Link Motion Inc.*, No. 1:18-cv-11642 (S.D.N.Y.

3

Dec. 13, 2018), Dkt. 1 [hereafter "*Baliga* Compl." and "*Baliga* Dkt."].[1] In that action—also assigned to Judge Marrero—Baliga asserted common law claims for breach of fiduciary duty and unjust enrichment, and federal securities law claims. *Id.* ¶¶ 36–54. LKM's present malpractice action arises out of DLA Piper's purported negligent representation of LKM in the *Baliga* action. Accordingly, we briefly review the history of that action before turning to jurisdictional analysis in the instant case.[2]

## I.     The *Baliga* Action

### A. DLA Piper's Conduct in the *Baliga* Action

DLA Piper learned of the *Baliga* action on December 13, 2018, when Baliga's counsel, knowing that DLA Piper had represented LKM in connection with a stock offering, sent the firm a courtesy copy of the *Baliga* complaint and advised that it would move the next day for a temporary restraining order ("TRO"), preliminary injunction, and appointment of a receiver.

---

[1] LKM's instant complaint alleges that ADRs "represent[] rights to ownership of stated denominations of American Depositary Shares (ADS)." LKM Compl. ¶ 19 n.3, J. App'x 23. As such, ADRs are "contractual rights" providing "evidence of the underlying ADSs," but "are not registered shares of stock." *Id.*

[2] A more detailed history of the *Baliga* case is provided in decisions of the district judge and magistrate judge handling that case as well as this one. *See Baliga v. Link Motion Inc.*, No. 1:18-cv-11642, 2022 WL 3699339, at *1–3 (S.D.N.Y. Aug. 25, 2022); *Baliga v. Link Motion Inc.*, No. 1:18-cv-11642, 2022 WL 2531535, at *1–3 (S.D.N.Y. Mar. 9, 2022).

DLA Piper promptly emailed notice of the *Baliga* action to LKM's in-house counsel and reported that an associate would appear in connection with the next day's TRO application and advise the court that the firm had not yet received instructions from LKM on how to proceed.

The next day, December 14, 2018, the district court entered a TRO enjoining LKM from transferring or dissipating any assets for fourteen days. At the same time, the district court ordered the parties to confer and to submit a joint letter by December 21 indicating whether LKM consented to extend the TRO and proposing a briefing schedule on the preliminary injunction and receiver motions.

Over the next several days, DLA Piper repeatedly sought LKM's guidance as to how to proceed in the *Baliga* action. Receiving none, on December 21, 2018, Baliga's counsel and a DLA Piper attorney submitted a joint letter to the district court consenting to extension of the TRO pending decision on Baliga's preliminary injunction and receiver motions. On December 27, 2018, the district court ordered LKM to file a response to these outstanding motions by January 21, 2019.

Over the next month, DLA Piper continued to seek LKM's instructions as to how it wished to proceed in the *Baliga* action. On January 14, 2019, DLA Piper sent an email, in both English and Mandarin, to all members of the LKM Board, including Board Chair Shi, stating that the firm had "repeatedly asked for instruction on how to proceed" in the *Baliga* action "but ha[d] not received any guidance from the Company or the individual defendants." Ex. D at 3, Decl. of Nancy Hart, *China AI Cap. Ltd. v. DLA Piper LLP (US), et al.*, No. 1:21-cv-10911

(S.D.N.Y. Sept. 26, 2022), Dkt. 37-4 (Jan. 14, 2019 email).[3]  Receiving no response to this communication, on January 18, 2019, DLA Piper sent LKM another email advising that if no instructions were received within 24 hours, DLA Piper would "assume that [it] ha[d] [LKM's] consent to not oppose the [*Baliga*] motion."  *Id.* at 1 (Jan. 18, 2019 email).

With no response forthcoming from LKM, on January 21, 2019, DLA Piper and Baliga's counsel filed a joint stipulation with the district court stating that LKM did not oppose entry of a preliminary injunction and that Baliga agreed to an extension of time for LKM to answer the complaint.  The district court so-ordered the stipulation and, on February 1, 2019, issued the requested preliminary injunction and appointed a receiver.

On March 1, 2019, DLA Piper sought leave to withdraw from the *Baliga* action, citing LKM's failure both to pay the firm's overdue legal fees and "to cooperate in the [firm's] representation by failing to respond to [counsel's] inquiries."  Letter at 3, *Baliga* Dkt. 28.  The district court granted the request the same day.

### B.  Dissolution of Preliminary Injunction and Receivership

Several years later, on review of various motions and amended pleadings filed in the *Baliga* action, the district court adopted a magistrate judge's detailed report recommending rejection of a challenge to the court's jurisdiction but also dissolution of the receivership.  As to the former, the district court concluded that

---

[3] *See infra* at 8 (discussing *China AI Capital Ltd. v. DLA Piper LLP (US)* in relation to instant action).

6

although Baliga, as an LKM ADR holder but not a registered shareholder, appeared to lack standing under Cayman Islands law to bring derivative common law claims on behalf of LKM, he had standing under federal law to pursue his federal securities claims. *See Baliga v. Link Motion Inc.*, No. 1:18-cv-11642, 2022 WL 2531535, at *10–14 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted,* 2022 WL 3699339, at *1, *5 (S.D.N.Y. Aug. 25, 2022).[4] Accordingly, the district court found that its order imposing receivership was not void *ab initio*. *See Baliga v. Link Motion Inc.*, 2022 WL 3699339, at *5. Further, because Baliga's second amended complaint stated only direct, not derivative, claims for which he could not show that available legal remedies would be inadequate, the court concluded that continued receivership was unwarranted and ordered dissolution. *See id.* at *5–6.[5]

## II.    The Instant Action

### A. Initiation and Removal

The road to the instant action has not been direct. Prior to dissolution of the LKM receivership, only the receiver could sue in the name of the company. The receiver did not bring suit against DLA Piper for legal malpractice in the *Baliga*

---

[4] The question of Baliga's standing to pursue his derivative claims thus appears to be statutory rather than constitutional. *See In re Facebook, Inc. Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015) (holding that failure to satisfy contemporaneous ownership requirement does not raise jurisdictional issue under Article III, but, rather, means that plaintiff does not have standing to represent nominal defendant's interests in derivative capacity).

[5] The *Baliga* action appears to be ongoing, with a third amended complaint filed on September 11, 2023.

action. Instead, on December 20, 2021, LKM registered shareholder China AI Capital Ltd. ("China AI") brought such a claim derivatively in the Southern District of New York, where it too was assigned to Judge Marrero. After dissolution of the receiver, China AI moved voluntarily to dismiss its malpractice action.[6]

On September 12, 2022, LKM initiated the instant malpractice action in New York Supreme Court. Therein, it alleges that, in the *Baliga* action, DLA Piper acted without LKM's informed consent in representing to the district court that LKM did not oppose entry of the preliminary injunction. LKM also alleges that no preliminary injunction or receivership would have been ordered had DLA Piper timely advised LKM and argued to the district court that Baliga (1) lacked standing to bring derivative claims on behalf of the company (which DLA Piper knew or should have known based on its representation of LKM in the July 2018 stock offering); (2) failed to state the elements of a federal securities law claim; and (3) in any event, was required by Fed. R. Civ. P. 65(c) to post security.

DLA Piper removed the action to federal court on September 29, 2022, where it was assigned to Judge Marrero as related to the *Baliga* action. DLA Piper based the removal on federal question jurisdiction under 28 U.S.C. § 1331 and the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering*

_____

[6] That, however, did not end the matter. In 2024, Judge Marrero adopted a magistrate judge's recommendation that China AI be sanctioned under Fed. R. Civ. P. 11 for making false and frivolous allegations in its malpractice complaint. Litigation over the costs and fees due to DLA Piper under the sanctions order is ongoing.

8

*& Manufacturing*, 545 U.S. at 314, and supplemental jurisdiction under 28 U.S.C. § 1367. As to federal question jurisdiction, DLA Piper argued that LKM's malpractice action required evaluation of the merits of the federal defenses that LKM claimed DLA Piper should have raised in the *Baliga* action. As to supplemental jurisdiction, DLA Piper argued that the factual nexus between the state malpractice action and the federal *Baliga* action permitted the court to hear the former.

LKM moved for remand of its malpractice action to state court, arguing that federal question jurisdiction did not lie because DLA Piper could not show that the claim presented substantial federal issues as required by *Gunn v. Minton*, 568 U.S. at 258. As to supplemental jurisdiction, LKM argued that the plain language of 28 U.S.C. § 1441(a) permits removal only of those civil actions "of which the district courts of the United States have *original* jurisdiction." LKM Mem. Supp. Mot. Remand at 8, J. App'x 173 (quoting 28 U.S.C. § 1441(a)) (emphasis added).

The district court denied remand. *See Link Motion Inc. v. DLA Piper LLP (US)*, No. 1:22-cv-8313, 2022 WL 17884167 (S.D.N.Y. Dec. 23, 2022). While agreeing with DLA Piper that LKM's state malpractice claim did not arise directly under federal law, the district court concluded that it, nevertheless, fell within the narrow category of state law claims presenting substantial federal issues so as to warrant the exercise of federal jurisdiction. *See id.* at *5–9. The district court also denied LKM's subsequent motion for reconsideration or, in the alternative, certification of the issue for immediate interlocutory appeal.

9

**B. Dismissal**

On May 26, 2023, the district court dismissed LKM's complaint with prejudice as time barred. *See id.*, 2023 WL 3687731 (S.D.N.Y. May 26, 2023). Applying New York law, the district court found that LKM's claim accrued, at the latest, on January 21, 2019—the date on which DLA Piper joined Baliga's counsel in filing the joint stipulation stating that LKM did not oppose entry of a preliminary injunction. *See id.* at *4–5. LKM's September 12, 2022 filing of the instant malpractice action thus fell outside the applicable New York three-year statute of limitations, *see id.* at *5, and no tolling principles supported a contrary conclusion, *see id.* at *5–7. Denied reconsideration by the district court, *see id.*, 2023 WL 4080638 (S.D.N.Y. June 20, 2023), LKM timely filed this appeal challenging both the district court's judgment of dismissal and its earlier denial of LKM's motion to remand the malpractice action to state court.

For reasons that we will now discuss, we vacate the judgment of dismissal without considering timeliness because we conclude that the case must be remanded to the state court for lack of federal subject matter jurisdiction.

## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's denial of a motion to remand a removed case to the state court where it was originally filed, mindful that (1) the removing party—here DLA Piper—"bears the burden of demonstrating the propriety of removal," *O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018) (internal quotation marks omitted); (2) "statutory procedures for removal are to

10

be strictly construed"; and (3) we must "resolve any doubts against removability," *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021) (alteration adopted) (internal quotation marks omitted).

## II.    Subject Matter Jurisdiction

Federal law states that civil actions brought in state court over which "the district courts of the United States have original jurisdiction" may be removed to federal court.  28 U.S.C. § 1441(a).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  *Id.* § 1447(c).

The question of federal jurisdiction here depends on whether the asserted claim "aris[es] under the Constitution, laws, or treaties of the United States."  *Id.* § 1331.[7]  A claim most directly "arises under federal law when federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. at 257.  Nevertheless, the Supreme Court has identified a "'special and small' category of actual state claims that present significant, disputed issues of federal law."  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting *Gunn v. Minton*, 568 U.S. at 258).  For a state law claim to fall within this "slim category," the embedded federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state

---

[7] Neither in its notice of removal nor in its briefs to this court did DLA Piper assert diversity as the source of federal jurisdiction.  *See Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 207 (2d Cir. 2024) (holding that party forfeits invocation of subject matter jurisdiction when it fails timely to raise it and citing "familiar example" of forfeiture under federal removal statute).

11

balance approved by Congress." *Gunn v. Minton*, 568 U.S. at 258; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. at 314. While the first two factors here support the exercise of federal jurisdiction, the third and fourth do not.

## A. Federal Issue "Necessarily Raised"

The parties here agree that LKM's malpractice action implicates the federal law question of whether Baliga had standing to pursue his federal securities claims.[8] LKM nevertheless contends that this issue is not "necessarily raised" within the meaning of *Gunn* because it "relates to [a] defense," not an element of its malpractice claim. Appellant's Reply Br. at 4; *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense[.]" (emphasis in original)). We are not persuaded.

Although LKM characterizes the federal law standing issue as a "defense," its own complaint, on its face, demonstrates that the issue is integral to its malpractice claim. LKM there alleges that DLA Piper "breache[d] . . . the duty of care owed to the Company" by, *inter alia*, "failing to advise the Company that Baliga lacked standing." LKM Compl. ¶ 78, J. App'x at 37–38. Thus, to prove malpractice, particularly the causation element of that claim, LKM must show that it would have prevailed on a federal law standing challenge in the *Baliga* action.

---

[8] LKM's malpractice complaint also faults DLA Piper for failing to challenge the sufficiency of Baliga's pleadings as to his federal securities claims. DLA Piper, however, does not argue that this raises issues warranting the exercise of federal jurisdiction over the instant malpractice action. Accordingly, we here consider only the federal law standing issue on which it does rely.

*See Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007) (holding that to establish causation in legal malpractice action, "plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence"); *see also Gunn v. Minton*, 568 U.S. at 259 ("In cases like this one, in which the attorney's alleged error came in failing to make a particular argument, the causation element requires a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different."). Standing to pursue a federal securities claim necessarily raises a federal law issue. *See Drachman v. Harvey*, 453 F.2d 722, 727 (2d Cir. 1971) ("Federal law must be consulted to decide whether there is standing to sue under the Exchange Act[.]"); *accord CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 122 (2d Cir. 2013).

## B. Federal Issue "Actually Disputed"

Because the federal law standing issue is critical to the causation element of LKM's malpractice claim, it qualifies as a "central point of dispute" in that state action, satisfying the second requirement for the exercise of federal jurisdiction in this case. *Gunn v. Minton*, 568 U.S. at 259. It may well be that the district court's ruling in the *Baliga* action—that, as a matter of federal law, the plaintiff had standing to pursue his securities claims—will prevent LKM from succeeding on this point. The weakness of its position, however, does not alter the fact that the dispute, grounded in federal law, is central to its malpractice claim.

Nevertheless, as the Supreme Court has cautioned, "the mere presence of a [disputed] federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804,

13

813 (1986). To avoid remand, DLA Piper also must satisfy *Gunn*'s third and fourth factors. This it cannot do.

### C. Substantiality

The federal issue raised and disputed in a state action must be "substantial" to support the exercise of federal jurisdiction. To satisfy this third *Gunn* requirement "it is not enough that the federal issue be significant to the particular parties in the immediate suit"; rather, "[t]he substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. at 260. The law draws this distinction to ensure "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. at 313. Upon "careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d at 1029. That is the case here. The federal law standing issue embedded in LKM's state malpractice claim, however important to DLA Piper in this particular action, lacks the sort of significance *to the federal system as a whole* warranting the exercise of federal jurisdiction.

To explain, we discuss *Gunn* in more detail. The Supreme Court there considered whether a state law claim of legal malpractice in the handling of a patent case had to be brought in federal court because Congress had vested "exclusive jurisdiction" over patent disputes in the federal courts. *Gunn v. Minton*, 568 U.S. at 253. The Court concluded that it did not because the malpractice claim did not itself arise under federal law. *See id.* at 258. The Court further explained that "[b]ecause of the backward-looking nature of a legal malpractice claim, the

14

[federal] question is posed in a merely hypothetical sense." *Id.* at 261. As such, "[n]o matter how the state courts resolve[d] that hypothetical 'case within a case,' it [would] not change the real-world result of the prior federal patent litigation." *Id.* Accordingly, the Court ruled that "something more, demonstrating that the [federal] question is significant to the federal system as a whole, is needed" to warrant exercising federal jurisdiction over such a state law claim. *Id.* at 264.

DLA Piper argues that the "something more," missing in *Gunn* but present here, is the district court's August 25, 2022 order deciding the federal law issue embedded in LKM's instant malpractice action, *i.e.*, Baliga's standing to pursue federal securities law claims against LKM. *See supra* at 7. DLA Piper submits that as a result of this ruling—adverse to LKM—the malpractice action does not require the sort of retrospective, hypothetical analysis that the Supreme Court determined was, by nature, unlikely to hold significance for the federal system as a whole. *See Gunn v. Minton*, 568 U.S. at 259. Rather, it characterizes this action as a "collateral attack" on the August 2022 order that asks the state court "effectively to overrule [a] decision[] that the district court actually rendered." Appellee's Br. at 25, 32.[9] DLA Piper argues that "the possibility that a state court might render a contrary decision on an issue already decided—without any opportunity for correction by

---

[9] Further to this point, DLA Piper suggests that LKM acted in bad faith in bringing this malpractice action because it is a "copycat lawsuit" to the frivolous one brought in federal court by China AI, an entity allegedly connected to LKM Board Chair Shi. Appellee's Br. at 13; *see supra* at 8. We do not pursue this point further because the district court did not dismiss on this ground, and, on return of this case to state court, the New York Supreme Court will be able to address any claims of litigant misconduct in the initiation of the action.

the federal courts—threatens to undermine the finality of federal decisions and the development of a uniform body of federal law." *Id.* at 32 (internal quotation marks omitted). The argument fails to persuade.

In the unlikely event that the state court were to misapply federal law on remand, the error would not necessarily be federally unreviewable. Rather, review would be to the Supreme Court. *See* 28 U.S.C. § 1257. While such review is not automatic, its availability mitigates any risk to uniformity of federal law from possible state error. *See Merrell Dow Pharm. v. Thompson*, 478 U.S. at 816 (stating that "concern about the uniformity of interpretation . . . is considerably mitigated by the fact that, even if there is no original district court jurisdiction . . . this Court retains power to review the decision of a federal issue in a state cause of action"); *see also Liana Carrier Ltd. v. Pure Biofuels Corp.*, 672 F. App'x 85, 92 (2d Cir. 2016) (concluding no federal jurisdiction over state claim, in part, because state court's "resolution of any embedded federal issue, if decisive to the case, would ultimately be subject to possible Supreme Court review").

Even absent federal review, substantiality is not shown by the mere possibility of a state court ruling at odds with federal law. *See Gunn v. Minton*, 568 U.S. at 263 (explaining that possibility "that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger" federal jurisdiction, "even if the potential error finds its root in a misunderstanding of" federal law). Such a ruling would not alter the district court's federal law standing decision in the *Baliga* action itself. Nor would it control in any future federal securities cases. *See Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014) (observing that "question that will control many other cases is more likely to be a substantial

16

federal question"). It also would be unlikely to bear on other state malpractice cases, which, like this case, tend to arise under unique circumstances. *Compare Gunn v. Minton*, 568 U.S. at 262 (identifying no substantial issue in state legal malpractice claim based on federal patent litigation because state court decision would not "be controlling in numerous other cases" (internal quotation marks omitted)), *with Tantaros v. Fox News Network*, 12 F.4th 135, 142, 146 (2d Cir. 2021) (concluding that where New York law prohibits mandatory arbitration clauses "except where inconsistent with federal law," substantial federal issue arises that "will inform all future claims brought" under state statute). At most, a ruling favorable to LKM would shift certain costs in the *Baliga* action from client to attorney. But that is the same relief sought in every legal malpractice action, including the one at issue in *Gunn.*

*Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271 (4th Cir. 2022), cited by DLA Piper, is not to the contrary. The state contract claims there at issue were "inextricably intertwined with federal law" such that they would "alter the terms" of the parties' federally regulated relationship. *Id.* at 286–87. Here, the parties' attorney-client relationship is regulated by state, not federal, law. *See infra* at 19–20.[10]

In any event, we do not readily assume that state courts will cast aside applicable federal precedent. As the Supreme Court recognizes, a state court "is

---

[10] We need not discuss *New Life Ventures, Inc. v. Locke Lorde LLP*, No. 2:19-cv-162, 2019 WL 13212632 (E.D. Tex. Sept. 27, 2019), an unpublished, out-of-circuit district court opinion also cited by DLA Piper, except to state that we decline to follow the approach taken in that factually distinct case.

competent to apply federal law, to the extent it is relevant" to resolution of a state claim. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). Thus, in declining to exercise federal jurisdiction over the state malpractice claim in *Gunn v. Minton*, the Court instructed federal courts to trust their state counterparts to "hew closely to the pertinent federal precedents" in deciding federal issues embedded in state malpractice actions as "[i]t is those precedents, after all, that would have applied" had counsel made the argument allegedly omitted negligently. 568 U.S. at 262.

That conclusion applies with particular force here where the federal law standing issue allegedly neglected by DLA Piper was eventually raised and decided adversely to LKM in written decisions by both the magistrate judge and district judge in the *Baliga* action. *See supra* at 7. On return of this case to the New York Supreme Court, that court will have the benefit of these decisions, and we have no reason to doubt that it will give them careful review and appropriate weight in deciding LKM's claim of legal malpractice based on DLA Piper's alleged failure to raise a federal law standing challenge in the *Baliga* action.[11]

In sum, DLA Piper has not adduced the "something more" required by *Gunn v. Minton* to view the federal law standing issue in LKM's state malpractice

---

[11] Because our decision here pertains only to federal jurisdiction, we express no view as to the merits of the district court's decision in *Baliga* on the federal standing issue. We also express no view on the timeliness of LKM's malpractice action, except to note that if the state court, like the district court here, were to conclude that the action is untimely, it might well never have to consider any question of federal securities law standing.

claim as anything other than backward-looking and hypothetical. 568 U.S. at 264. The claim looks backward to ask whether the district court would have denied Baliga's motions for a TRO, preliminary injunction, and appointment of a receiver if, hypothetically, DLA Piper had timely challenged Baliga's standing under federal securities law. Thus, because the federal issue raised by LKM's state malpractice claim "is not substantial in the relevant sense," *id.* at 260, the district court was without jurisdiction to hear the claim.

### D. Federal-State Balance

The fourth *Gunn* factor requires little discussion because, as the Supreme Court has stated, in the absence of a substantial federal issue, "[i]t follows" that exercise of federal jurisdiction over a state claim would disrupt the "appropriate balance of federal and state judicial responsibilities." *Id.* at 264 (internal quotation marks omitted).

The balance inquiry requires sensitivity in recognizing claims of the "sort ordinarily resolved in state courts." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. at 683; *see New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 316 (2d Cir. 2016) (explaining that balance analysis properly focuses on "the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected," as well as any "special state interest in a category of litigation"). But, as the Supreme Court has repeatedly recognized, legal malpractice actions and attorney disciplinary proceedings plainly present the sort of claims ordinarily resolved in state courts. *See Gunn v. Minton*, 568 U.S. at 264 (identifying states' "special responsibility for maintaining [professional] standards" and emphasizing states' "especially great" interest in regulating

19

lawyers as professionals "essential to the primary governmental function of administering justice" (internal quotation marks omitted)); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (identifying state's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses" and reversing federal court's decision not to abstain from deciding challenge to state disciplinary rules, concluding that such disciplinary "proceedings are of a character to warrant federal-court deference"); *see also Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."). DLA Piper cites no authority suggesting "congressional[] approv[al]" for relocating legal malpractice claims away from their traditional state fora to federal courts. *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, 545 U.S. at 314; *see Gunn v. Minton*, 568 U.S. at 264 (noting absence of such authority).

Thus, because the established federal-state balance expects for legal malpractice actions to be heard in state court, this final *Gunn* factor also weighs against the exercise of federal jurisdiction in this case and in favor of the return of LKM's malpractice action to the New York Supreme Court.

## III. Supplemental Jurisdiction

With little discussion, DLA Piper argues that the district court had supplemental jurisdiction over LKM's state malpractice action due to its factual overlap with the federal *Baliga* action. In fact, this argument is foreclosed by the federal removal statute, which confers federal jurisdiction only over removed civil actions "of which the district courts of the United States have original jurisdiction."

20

28 U.S.C. § 1441(a); *see Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Ancillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441."); *Fracasse v. People's United Bank*, 747 F.3d at 143 (holding no supplemental jurisdiction over removed state case "as the removed action was not part of the separately filed, albeit related, federal case"). The district court had no original federal jurisdiction over LKM's state malpractice action. DLA Piper's reliance on *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006), is misplaced as that case did not involve the removal of an action from state court. *See* 28 U.S.C. § 1367(a) (distinguishing "civil action[s] of which the district courts have original jurisdiction" from "other claims" over which they may exercise "supplemental jurisdiction").

## CONCLUSION

For the foregoing reasons, we conclude that the district court was without subject matter jurisdiction to consider LKM's removed state legal malpractice claim against DLA Piper. We therefore VACATE the district court's judgment of dismissal without addressing its finding that LKM's action was untimely filed, and we REMAND with instructions that the district court return this case to the New York State Supreme Court for New York County.