Sunvestment Energy Group NY 64 LLC v. National Grid USA Services Co., Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2023

(Argued: April 15, 2024   Decided: September 6, 2024)

Docket No. 23-1213

———————————

SUNVESTMENT ENERGY GROUP NY 64 LLC, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, SARANAC LAKE COMMUNITY SOLAR, LLC,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs-Appellants*,

v.

NATIONAL GRID USA SERVICES CO., INC., NIAGARA MOHAWK POWER
CORPORATION,
*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Northern District of New York
No. 5:22-cv-1085, Brenda K. Sannes, *Chief Judge*.

———————————

Before:       LYNCH, PÉREZ, AND KAHN, *Circuit Judges*.

This dispute involves contested fees related to contracts that Defendants-Appellees National Grid USA Services Co., Inc. and its affiliate Niagara Mohawk Power Corporation executed over five years ago with Plaintiffs-Appellants Sunvestment Energy Group NY 64 LLC and Saranac Lake Community Solar, LLC.

Under the contract, Appellants, who are independent solar generators, are required to pay to Appellees the costs of interconnecting their solar energy projects to Appellees' electric distribution grid. Appellees charge Appellants a "tax gross-

up adder" to offset their federal income tax liability resulting from Appellants' interconnection payments under the agreement.

Appellants dispute the fees and sought a declaratory judgment that the interconnection payments are not taxable income. Appellants also sought to recover the allegedly unlawful tax-related fees that Appellees imposed on them by bringing state-law claims for damages. The district court dismissed the case after finding that it lacked subject-matter jurisdiction. As explained below, we **AFFIRM** the judgment of the district court.

AFFIRMED.

ANDREW M. MCNEELA, Kirby McInerney LLP, New York, NY (John R. Low-Beer, David E. Kovel, Kirby McInerney LLP, New York, NY; Seth Handy, Handy Law LLC, Providence, RI, *on the brief*), *for Plaintiffs-Appellants*.

RICHARD H. BROWN (Michael J. Fitzpatrick, *on the brief*), Day Pitney LLP, Parsippany, NJ, *for Defendants-Appellees*.

MYRNA PÉREZ, *Circuit Judge*:

This suit involves contested fees related to two contracts that Defendants-Appellees National Grid USA Services Co., Inc. and its affiliate Niagara Mohawk Power Corporation (collectively, "National Grid")[1] executed, one with Plaintiff-Appellant Sunvestment Energy Group NY 64 LLC ("Sunvestment") and the other

---

[1] Hereinafter, a reference to "National Grid" includes its affiliates.

with Plaintiff-Appellant Saranac Lake Community Solar, LLC ("Saranac") (collectively, with Sunvestment, "Appellants").  Under their contracts, Appellants, who are independent solar generators, are required to pay the costs of interconnecting their solar energy projects to National Grid's electric distribution grid.  As part of those costs, Appellees charge Appellants a "tax gross-up adder"[2] to offset their federal income tax liability resulting from Appellants' interconnection payments.  After a short working relationship, Appellants sought a declaratory judgment that the interconnection payments are not taxable income.  Appellants also brought state-law claims to recover the allegedly unlawful tax-related fees that Appellees imposed on them.

The district court dismissed the case after finding that it lacked subject-matter jurisdiction.  As explained below, we **AFFIRM** the district court's judgment.

## I.   BACKGROUND

National Grid claims that it must pay income tax to the Internal Revenue Service ("IRS") on Appellants' interconnection payments and passes those taxes

---

[2] This charge, also referred to as a "tax gross-up," is equal to the income tax that National Grid purportedly must pay minus the savings that National Grid receives by depreciating the assets that it acquires through the process of interconnecting Appellants' solar energy projects to the grid.

on to Appellants to make National Grid whole pursuant to the parties' agreements. Appellants dispute whether National Grid actually owes income tax to the IRS on their interconnection payments and, therefore, whether National Grid can legitimately charge them the tax fees. Specifically, the parties disagree as to whether a safe harbor articulated in IRS Notice 2016-36 (the "Notice") excludes the interconnection payments from Appellees' taxable income. Unable to resolve their disagreement, Appellants brought the instant action.

## A. The Parties

Appellants, Sunvestment and Saranac, are independent renewable energy generators who operate solar projects in New York. Appellees are subsidiaries of National Grid plc, a UK utility company "focused on transmission and distribution of electricity and gas." J. App'x at 14. Appellee Niagara Mohawk is a New York corporation "engaged in the regulated energy delivery business" to provide electric and natural gas service to customers in New York. *Id*. Appellee National Grid USA Services Co., Inc. is a Massachusetts corporation that "provides administrative and support services, including tax policy advice and tax

4

accounting services" to Niagara Mohawk and other subsidiaries of National Grid plc. *Id*.

### B. The Relevant Agreements, 26 U.S.C. § 118(a), and IRS Notice 2016-36

On August 2, 2017, Saranac executed a New York State Standardized Contract for Interconnection of New Distributed Generation Units ("SCI") with National Grid to operate a solar energy project in Saranac Lake, New York. Sunvestment executed an SCI with National Grid on June 14, 2018, to operate a solar energy project in Geneseo, New York. Pursuant to those SCIs, National Grid connects Appellants' solar projects to its distribution system and subsequently purchases electricity generated by Appellants. Under the SCIs, Appellants are required to pay National Grid for any upgrades or modifications to the power grid that are necessary to interconnect their projects, and those alterations thereafter become the property of National Grid.[3]

National Grid claims that it must pay income tax to the IRS on Appellants' interconnection payments in accordance with 26 U.S.C. § 118(a) and its related IRS

---

[3] More specifically, the SCIs provide as follows:

> During the term of this Agreement, the Utility shall design, construct and install the Dedicated Facilities. The Customer shall be responsible for paying the incremental capital cost of such Dedicated Facilities attributable to the Customer's Unit. All costs associated with the operation

Notice 2016-36.  As such, National Grid passes those income tax payments down to Appellants as part of the costs purportedly necessary to interconnect the projects to the grid.

Although the details of the pertinent tax provisions are not directly relevant to our holding in this case, we briefly outline them here as context for the parties' dispute.  26 U.S.C. § 118(a) provides that, "[i]n the case of a corporation, gross income does not include any contribution to the capital of the taxpayer."  Section 118(b), in relevant part, provides that, for purposes of § 118(a), "the term 'contribution to the capital of the taxpayer' does not include . . . any contribution in aid of construction or any other contribution as a customer or potential customer."

The IRS published Notice 2016-36, titled "Transfers of Property to Regulated Public Utilities by Electricity Generators," in June 2016.  2016-25 I.R.B. 1029.  The Notice

> provides a safe harbor for transfers of property from either an electricity generation or cogeneration facility or an energy storage facility to a regulated public utility, used to facilitate the transmission of electricity over the utility's transmission system, to be treated as a

---

and maintenance of the Dedicated Facilities after the Unit first produces energy shall be the responsibility of the Utility.

J. App'x at 107.

> contribution to the capital of a corporation under § 118(a), and not a contribution in aid of construction (CIAC) under § 118(b).

*Id.* In other words, payments that fall within the safe harbor are not taxable income of the corporation. The Notice also clarifies that the safe harbor can apply "even if the generator is interconnected with a distribution system, rather than a transmission system," if all the relevant requirements are met. *Id.* That clarification matters to the parties' views of the tax issue because Appellants' solar energy projects interconnect to National Grid's distribution network, not its transmission network. [4]

## C. Related Relevant Litigation

Appellants and others have challenged National Grid's tax arguments in several proceedings as part of a broader battle with National Grid that started over

---

[4] According to Appellants, the difference between a transmission network and a distribution network is that "the transmission network carries electricity over long distances through high-voltage wires whereas the distribution network carries that same power to end users over smaller wires at lower and safer voltages." J. App'x at 26.

ten years ago. Therefore, before turning to the procedural history of this case, we find it pertinent to explain some of the relevant proceedings related to this dispute.

### 1. State Litigation

In 2014, an independent solar generator based in Rhode Island filed a petition with the Rhode Island Public Utilities Commission ("RIPUC") against National Grid challenging the reasonableness of National Grid's tax adder fees related to the interconnection cost. In response, National Grid asserted that RIPUC lacked subject-matter jurisdiction on issues of federal tax liability. In November 2017, RIPUC issued a final order concluding that "the pass-through tax charges [that is, the tax gross-up adder fees] were reasonable." J. App'x at 32.

The Rhode Island Supreme Court affirmed RIPUC's ruling, declining to decide "[w]hether the tax is actually owed to the IRS" and instead holding only that it was "entirely reasonable" for the utility to "believ[e] that it continues to owe the interconnection tax at issue in this case to the IRS" and to "pass[] that tax on to petitioners." *ACP Land, LLC v. R.I. Pub. Utils. Comm'n*, 228 A.3d 328, 334, 338 (R.I. 2020). The Rhode Island Supreme Court also acknowledged that the Notice had not resolved the federal tax question and conveyed its "fervent hope that the IRS

8

will provide clear and concise guidance to these parties in the near future." *Id.* at 338.[5]

### 2. Federal Litigation

After six years of state proceedings, Appellants and other solar generator companies filed similar federal actions against National Grid in the District of Rhode Island, the District of Massachusetts, and the Northern District of New York. The action filed in the Northern District of New York is the subject of the instant appeal.

The district court in Massachusetts entered an order dismissing the suit on jurisdictional grounds. *See Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co.*, No. 22-11791-RGS, 2023 WL 2992524 (D. Mass. Apr. 18, 2023) (dismissing plaintiffs' complaint as barred by the Declaratory Judgment Act and because it failed to raise a substantial federal question). The plaintiffs in the Massachusetts

---

[5] The Department of the Treasury has stated since 2022 that issuing "[g]uidance under § 118 to clarify the safe harbor under Rev. Proc. 2016-36 regarding distribution lines" is a priority, but it has not yet done so. *See* Dep't of Treasury, Office of Tax Policy and Internal Revenue Service 2022-2023 Priority Guidance Plan 9 (Nov. 4, 2022), available at https://perma.cc/57SY-GCW8; *see also* Dep't of Treasury, Office of Tax Policy and Internal Revenue Service 2023-2024 Priority Guidance Plan 11 (Sept. 29, 2023), available at https://perma.cc/GD5S-3WA3.

case appealed, and the related action in the District of Rhode Island was stayed pending the First Circuit's resolution of that appeal.

The First Circuit affirmed the judgment of the district court in Massachusetts. In doing so, it found that the solar companies failed to demonstrate subject-matter jurisdiction because their claims did not arise under federal law. *Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co.*, 88 F.4th 58, 61, 66 (1st Cir. 2023). [6]

## II.    PROCEDURAL HISTORY

Appellants filed this suit in the Northern District of New York on their own behalf and on behalf of a similarly situated class on October 20, 2022. The complaint brought four claims against National Grid: (1) a request for declaratory relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a) (Count I); (2) a state-law claim for a breach of the covenant of good faith and fair dealing (Count II); (3) a state-law claim for restitution and unjust enrichment (Count III); and (4) a state-law claim for violating New York Public Service Law § 65 by levying

---

[6] As explained further *infra* Section III.C, although the most common basis for federal-question jurisdiction is a federal cause of action, there is "a 'special and small' category of actual state claims" that may give rise to federal-question jurisdiction because they "present significant, disputed issues of federal law." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). The First Circuit held that the state-law claims at issue in the Massachusetts case did not fall within that category. *Tyngsboro Sports*, 88 F.4th at 66–69.

a charge that was not just and reasonable (Count IV).  In addition to declaratory relief, Appellants sought monetary damages and an order enjoining Appellees from "charging a tax gross-up adder on renewable energy projects."[7]  J. App'x at 39.

Appellees moved to dismiss the complaint in its entirety.  The district court found that it lacked subject-matter jurisdiction and dismissed the complaint without prejudice.  *See Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, No. 22-1085, 2023 WL 5175933 (N.D.N.Y. Aug. 11, 2023).  The district court first concluded that the Appellants' request for a declaratory judgment was barred by the DJA since, in a hypothetical coercive suit, "[t]he federal tax issue would arise only as a defense to [a] breach of contract claim," which "is insufficient to invoke . . . federal question jurisdiction."  *Id*. at *6.  The district court next considered whether it had "arising under" jurisdiction over any of Appellants' state-law claims.  *Id*. at *6–9.  The district court found that the disputed federal tax issue was not substantial under the Supreme Court's test in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).  *Id*. at *8–

---

[7] In 2019, National Grid invoiced Sunvestment $315,931, which included $17,556.76 in tax fees for "upgrades to interconnect" Sunvestment's project.  J. App'x at 13 ¶ 18.  Similarly, National Grid invoiced Saranac $336,390, including $40,000.47 in tax fees.  Appellants paid the invoices.

9. As such, the district court held that it lacked subject-matter jurisdiction and dismissed the complaint without prejudice. *Id*. at *9.

This appeal followed.

### III.   DISCUSSION

On appeal, Appellants argue that the district court did have jurisdiction over their claims because (1) their DJA claim (Count I) comported with the well-pleaded complaint rule and (2) their three state-law claims (Counts II–IV) arose under federal law. For the reasons below, we disagree and affirm the district court's judgment.

### A. Standard of Review

In considering Appellants' argument, we note that we always have authority to determine whether the district court had jurisdiction. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997) (internal quotation marks, brackets, and citations omitted) ("When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit."); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 121 (2d Cir. 2007) ("We conclude that review of [whether we have subject-matter jurisdiction] is required pursuant to our

12

independent obligation to satisfy ourselves of the jurisdiction of this court and the court below.").

In reviewing a district court's dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), this Court reviews "factual findings for clear error and legal conclusions de novo." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks and citation omitted). "In so doing, we accept the complaint's material allegations as true, and we draw all reasonable inferences in the plaintiffs' favor." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017). We begin by explaining our decision to affirm the district court's judgment as to the DJA claim, Count I.

## B. Declaratory-Judgment Claim

The DJA provides as follows:

(a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The DJA does not create an independent basis for federal subject-matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950);

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) (explaining that the DJA is procedural only). Nor does the DJA expand the federal courts' subject-matter jurisdiction. *Skelly Oil*, 339 U.S. at 671. It is well established that neither we nor Congress can expand this jurisdiction beyond what the Constitution allows. *Battaglia v. Gen. Motors Corp.*, 169 F.2d 254, 257 (2d Cir. 1948). The DJA only provides courts with discretion to fashion a remedy, not a cause of action. *See Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952).

To determine whether a court has subject-matter jurisdiction over a DJA claim, this Court follows *Skelly Oil*'s approach to "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 67 (2d Cir. 2012); *see also Skelly Oil*, 339 U.S. at 672 ("If Phillips sought damages from petitioners or specific performance of their contracts, it could not bring suit in a United States District Court on the theory that it was asserting a federal right. . . . [S]uch a suit would 'arise' under the State law governing the contracts."). Said differently, this Court examines the declaratory *defendant's* hypothetical well-pleaded complaint to determine whether federal-question subject-matter jurisdiction exists. *See Franchise Tax Bd. v. Constr. Laborers Vacation*

14

*Tr. for S. Cal.*, 463 U.S. 1, 19 (1983); *Garanti Finansal*, 697 F.3d at 68 (internal quotation marks and citation omitted) ("[W]e have summarized the law as follows: a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff."); *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 182 (2d Cir. 2018). If that were not the rule, "artful pleading . . . would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act." *Skelly Oil*, 339 U.S. at 673–74.

We also note that, even assuming that all the prerequisites for a declaratory judgment have been met, the DJA "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks and citation omitted); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (internal quotation marks

omitted) (explaining that district courts retain "broad discretion" to decline jurisdiction under the DJA).

Here, under the applicable framework above, Appellants do not meet the threshold requirement for declaratory relief. As alleged by Appellants, "National Grid continues to charge Plaintiffs for the tax gross-up." J. App'x at 33. Appellants seek a declaration that certain tax payments passed through to them by National Grid pursuant to a contract are not owed. Under this factual scenario, the only "coercive action" (*i.e.*, non-declaratory action) between these parties might be a breach of contract claim by National Grid against Appellants for failing to pay the tax gross-up (*i.e.*, the passed-through taxes). There, the federal tax issue might only arise as a defense asserted by Appellants to a state-law claim that could itself be established without necessarily ruling on the federal tax question. Accordingly, we agree with the district court that a well-pleaded complaint in this scenario would not raise a federal question because it would merely contain a state-law claim for breach of contract, which does not raise a federal law as an essential element. We therefore affirm the district court's judgment as to Appellants' DJA claim.

## C. State-Law Claims

We also affirm the district court's judgment as to Appellants' state-law claims because the federal issue in those claims is not substantial under the applicable framework.

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court has previously explained that a claim most directly "arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Even so, the Supreme Court has recognized a "'special and small' category of actual state claims that present significant, disputed issues of federal law." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (quoting *Gunn*, 568 U.S. at 258). To fall within the category of state-law claims that confer federal-question jurisdiction, a state-law claim must contain a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 313–14; *Franchise Tax Bd.*, 463 U.S. at 9–10, 13. All four requirements must be met for federal jurisdiction to be proper, *Gunn*, 568 U.S. at

17

258, but we address only the substantiality requirement in this case. Because claims must be substantial to establish jurisdiction, and substantiality is *not* met here, jurisdiction necessarily fails, and we need not go further.[8]

The inquiry as to whether a federal issue is "substantial" does not focus on "the particular parties in the immediate suit," but instead centers on "the importance of the issue to the federal system as a whole."[9] *Gunn*, 568 U.S. at 260; *see also Link Motion Inc. v. DLA Piper LLP (US)*, 103 F.4th 905, 914 (2d Cir. 2024). Thus, a substantial federal issue typically exists only in those exceptional cases that go beyond the application of some federal law raised in connection with state-law claims and instead implicate broad consequences to the federal system or the nation as a whole. *See Gunn*, 568 U.S. at 263–64 (explaining that the "resolution of

---

[8] Given that Appellants' claims here are not substantial, we decline to address the parties' dispute as to whether the state-law claims "necessarily raised" a federal question. The substantiality requirement "is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 124 (2d Cir. 2020) (citation and internal quotation marks omitted).

[9] Similarly, the substantiality prong of the four-part test governing whether state-law claims raise a federal question differs from the question of whether a complaint raises a substantial federal question under cases like *Bell v. Hood*, 327 U.S. 678 (1946). The Supreme Court has explained, regarding that line of cases, that, "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a *substantial* federal question should be presented." *Shapiro v. McManus*, 577 U.S. 39, 44 (2015) (internal quotation marks and citation omitted). In that context, a federal question may be substantial as long as it is not "essentially fictitious," "obviously frivolous," or "wholly insubstantial." *Id.* at 45 (internal quotation marks and citation omitted). In the four-part test governing state-law claims that present federal questions, by contrast, the substantiality inquiry does not mean merely "not frivolous"; it instead concerns the broader significance of the issue to the entire federal system.

a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case," but that more is needed to "demonstrat[e] that the question is significant to the federal system as a whole").

A few Supreme Court and Second Circuit cases have suggested that certain considerations may be relevant when determining what makes an issue important to the federal system as a whole. An issue is more likely to be substantial if it "present[s] a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (internal quotation marks and citation omitted); *see also Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 145 (2d Cir. 2021). By contrast, federal issues that are "fact-bound and situation-specific . . . are not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (internal quotation marks and citation omitted). Additionally, a substantial federal issue is more likely to be present if it has "broader significance . . . for the Federal Government" by, for example, affecting the government's practices in other cases. *Gunn*, 568 U.S. at 260; *see also NASDAQ OMX Grp.*, 770 F.3d at 1024. Thus, in *Grable*, where the IRS had seized the plaintiff's property and sold it to satisfy a tax delinquency, the Supreme Court found that a federal issue concerning

notice of the sale was substantial in part because the federal government has a "direct interest in the availability of a federal forum to vindicate its own administrative action." *Gunn*, 568 U.S. at 260–61 (citing *Grable*, 545 U.S. at 315).

Those considerations are nonexclusive, and no single consideration is necessarily controlling. As we have previously explained, "substantiality must be determined based on a careful, case-by-case judgment." *NASDAQ OMX Grp.*, 770 F.3d at 1028. "[I]t is to be expected that, after such careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial." *Id.* at 1029. Applying both considerations to the claims at issue, each confirms that there is no "substantial" issue of federal law present in this matter.

### 1. Pure Issue of Law

Here, the legality of Appellees' passed-through tax fees to Appellants is not a pure question of law. A decision by the district court regarding whether the interconnection payments to National Grid are taxable as income and may be passed down to solar companies would turn on a mixed question of federal law and facts because it would "involve[] the application of a legal standard to a particular set of facts." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426,

20

437 (2d Cir. 1999) (internal quotation marks and citation omitted). Specifically, it turns on, among other things, (1) the nature of the parties' agreement and (2) whether a particular solar company connects to National Grid's distribution or transmission systems. As Appellants acknowledge, it remains unknown how many other utility companies follow National Grid's practices. Claims that present "fact-bound and situation specific" issues instead of a "pure issue of [federal] law" do not raise substantial issues of federal law. *Empire Healthchoice Assur.*, 547 U.S. at 700–01 (internal quotation marks and citation omitted); *see also Link Motion Inc.*, 103 F.4th at 915 (suggesting that issues that "tend to arise under unique circumstances" are not substantial for purposes of federal-question jurisdiction).

Appellants argue that this Court's decision in *Tantaros v. Fox News Network, LLC* suggests that we must conclude they have satisfied the substantiality requirement. However, Appellants' reliance on *Tantaros* is misplaced. Unlike this case, *Tantaros* presented "a purely legal [question] concerning the preemptive effect of a federal statute." *Tantaros*, 12 F.4th at 146. This Court in *Tantaros* found that an answer to such a question "will inform all future claims brought under [New York State's C.P.L.R.] § 7515." *Id*. In contrast, Appellants' claims are

21

situation-specific, and the resolution of the federal issue in those claims would not inform a significant number of other cases.

## 2. Broader Significance for the Federal Government

Here, the federal issue does not have broader significance for the federal government. Appellants contend that the federal tax question is important to the federal system because of the federal interest, suggested in several statutes and regulations, in encouraging renewable energy. But, if that were enough, "every state law claim that adverts in any part to a proposition of federal law would satisfy the 'substantiality' requirement," which "would render inquiry as to whether the claims 'arise under' federal law meaningless and clearly fly in the face of the Supreme Court's test." *Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014).

Appellants largely point to *Grable* to suggest that we reach the opposite conclusion. The essential issue in *Grable* was whether the IRS had failed to notify Grable "in the exact manner required by [26 U.S.C.] § 6335(a)"[10] when it seized Grable's property to satisfy a delinquent tax debt and later sold the property to the

---

[10] *See Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378 (1977) ("This Court has consistently held that state law governs issues relating to . . . real property, unless some other principle of federal law requires a different result.").

defendant. *Grable*, 545 U.S. at 311. Plainly, resolving the dispute required the Supreme Court to determine whether Section 6335(a) required personal service or allowed service by certified mail. Such a determination would directly affect IRS practices in every collection case. In finding federal-question jurisdiction to be proper, the Supreme Court noted the government's "strong interest in the prompt and certain collection of delinquent taxes" and the importance of ensuring the IRS could "satisfy its claims from the property of delinquents." *Id*. at 315 (internal quotation marks and citation omitted). Because of those considerations, the government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id*.

In this case, Appellants do not allege that the IRS itself is even assessing the taxes Appellees are charging them.[11] Instead, Appellants allege that Appellees are taking it upon themselves to assess the amount owed to the IRS, pay income tax on their interconnection payments, and pass the potential resulting liability on to Appellants. As such, Appellants merely challenge the actions of Appellees, a private party, not the actions of the IRS. Further, neither the IRS nor any other government agency has a "direct interest" in, or would be affected by, the outcome

---

[11] According to Appellants, National Grid refuses to seek an answer from the IRS as to whether the taxes are actually owed.

of this matter. *See Gunn*, 568 U.S. at 260–61 (brackets and internal quotation marks omitted) (citing *Grable*, 545 U.S. at 315) (explaining that the government's "direct interest" "made the question an important issue of federal law that sensibly belonged in a federal court"). The issues here are significant only to the relevant parties and their specific disputes. Because Appellants' claims do not raise an issue of "importance . . . to the federal system as a whole," the district court lacked subject-matter jurisdiction.

## IV.   CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court dismissing the complaint for lack of subject-matter jurisdiction.